634 So.2d 655 (1994)
TALLAHASSEE MEMORIAL REGIONAL MEDICAL CENTER, INC., Appellant,
v.
Joyce WELLS, Appellee.
No. 92-3294.
District Court of Appeal of Florida, First District.
February 9, 1994.
As Clarified March 14, 1994.
*656 Jesse F. Suber of Henry & Buchanan, P.A., Tallahassee, for appellant.
Jon D. Caminez and Barry Gulker of Caminez, Walker & Brown, Tallahassee, for appellee.
SMITH, Judge.
Tallahassee Memorial Regional Medical Center, Inc. (TMRMC), appeals a final judgment entered against it after a jury trial, contending that the trial court erroneously refused to set-off from the judgment the amounts paid in settlement by two co-defendants prior to trial. Upon consideration of certain language appearing in the decision of the Florida Supreme Court in Fabre v. Marin, 623 So.2d 1182 (Fla. 1993) (Fabre II), we conclude that reversal is mandated. However, we certify the question at issue as one of great public importance.
The appellee, Joyce Wells, as representative of the estate filed suit against TMRMC, Dr. Donald Alford, M.D., Dr. Bruce Sell, M.D., Raymond Johns, a certified registered nurse anesthetist, and Anesthesiology Associates, for wrongful death of her husband, Jacob Wells, while in the care of the defendants. The claim against Dr. Sell was dismissed. Prior to trial, Wells reached a settlement with the remaining defendants, receiving in settlement $250,000 from Dr. Alford, and $50,000 from Johns and Anesthesiology Associates.
The case went to trial against TMRMC as the sole defendant; however, the jury was instructed to apportion fault among all defendants.[1] At the conclusion of the trial, the jury returned a verdict assessing damages at $573,853, finding TMRMC 90% at fault, Dr. Alford 5% at fault, and Johns and Anesthesiology Associates 5% at fault. By amended final judgment, the appellee was found to have sustained, consistent with the jury verdict, $202,853 in economic damages and $371,000 in non-economic damages, which totals $573,853.[2] The appellee was awarded 90% of this sum, plus $9,000 in costs; however, $17,000 was deducted as a setoff for the social security benefits received by appellee for a total of $509,267.70.[3]
TMRMC moved the court for a reduction of the amended judgment by setting off from the total damages awarded the sum of $300,000, the total amount received by Wells from the settling defendants. After a hearing on the motion, the trial court denied the requested setoff. This appeal followed.
This case raises issues relating to the several statutes in effect in Florida which provide, albeit in somewhat different language, for a reduction of the damages recoverable from a non-settling tortfeasor based upon the amount of damages received in settlement from other jointly or severally liable tortfeasors.[4] More importantly, this case raises the *657 question of the effect, if any, upon the applicability of these statutes created by the adoption of section 768.81(3), which provides for the apportionment of damages based upon each party's percentage of fault, and not on the basis of joint and several liability.[5]
TMRMC urges that notwithstanding the abolition of joint and several liability accomplished by section 768.81 (except as to economic damages, with respect to a defendant whose percentage of fault equals or exceeds that of the claimant), the other previously existing statutory provisions still require a setoff or reduction in the amount of the total damages assessed by the jury, in the amount of $300,000 paid in settlement by Dr. Alford and Anesthesiology Associates. More specifically, TMRMC argues, section 768.041(2) provides that when a release has been given "in partial satisfaction of the damages sued for," the court "shall setoff this amount from the amount of any judgment to which the plaintiff would be otherwise entitled ...," and the court must enter judgment accordingly. Further, section 768.31(5)(a) provides that a release or covenant not to sue does not discharge any other tortfeasors from liability, "but it reduces the claim against the others to the extent of any amount stipulated by the release or the covenant, or in the amount of the consideration paid for it, whichever is the greater; ... ."
It is important to note that under both statutes, sections 768.041(2) and 768.31(5)(a), in order for a setoff to be made the payments made in settlement must be in satisfaction of the claim at issue in the lawsuit, not a separate claim. Devlin v. McMannis, 231 So.2d 194 (Fla. 1970); Florida Patient's Compensation Fund v. Scherer, 558 So.2d 411 (Fla. 1990). In the case before us it is without dispute that the settlement payments were made in partial satisfaction of the damages sued for.
The trial judge below rejected appellant's arguments, reasoning that notwithstanding the existence of the statutes above referred to, the judgment against TMRMC should be in accordance with the jury's verdict; and that since the jury was called upon to decide the specific amount that should be paid by TMRMC, the judgment should be based upon that amount. We note that the trial court at the time of this ruling did not have the benefit of the supreme court's recent decision in Fabre v. Marin, supra, which, as we indicated earlier, in our opinion dictates a contrary result.
Upon certification of conflict, the Florida Supreme Court in Fabre II disapproved the Third District's decision in Fabre v. Marin, 597 So.2d 883 (Fla. 3d DCA 1992) (Fabre I), and approved the ruling of the Fifth District in Messmer v. Teachers Insurance Co., 588 So.2d 610 (Fla. 5th DCA 1992). In Fabre II, the court found that section 768.81(3), Florida Statutes (1991), is unambiguous; that by its terms the statute requires entry of judgment against each party liable based upon their percentage of fault; and further, that the only means of determining a party's percentage of fault "is to compare that party's percentage of fault to all of the other entities *658 who contributed to the accident, regardless of whether they have been or could have been joined as defendants." Id. at 1185 (emphasis added). Mrs. Marin, the injured party, argued that judgment should have been entered for the full amount of her damages against the Fabres, although they were found to be only 50 percent at fault by the jury, because, under the doctrine of interspousal immunity, Mrs. Marin could not recover damages from her husband who was found 50 percent at fault in causing the accident. This argument was rejected by the court, based upon its interpretation of the statute.
We recognize that the Fabre II court was not called upon to reach the specific issue presented in the case before us; that is, whether in entering judgment for the apportioned liability of a non-settling defendant, the amount of the judgment should be reduced by sums paid in return for a release from liability by settling parties. Nevertheless, the court expressed a belief that any conflicts or inconsistencies between section 768.81(3) and other statutes could be harmonized; and in event they cannot be harmonized, the court said, then the issue must be resolved by application of the legislative directive appearing in section 768.71(3) which states that in event of conflict with other statutes, "such other provisions shall apply." From these and other expressions of the court in its Fabre II opinion, it is clear that the appellee's arguments, both here and in the lower court, that the setoff provisions do not survive the abolition of joint and several liability found in section 768.81(3), must yield to the contrary legislative intent expressed in section 768.71(3).
Should there remain any doubt as to the applicability of the setoff provisions in the light of section 768.81(3), we find such doubt eliminated by reference to footnote 3 of the Fabre II opinion, which we think can be best explained here by quoting in its entirety:
Thus, we reject the argument that our interpretation of section 768.81(3) when coupled with the right to setoff under section 768.31(5) will lead to a double reduction in the amount of damages. This possibility may be avoided by applying the setoff contemplated by section 768.31(5) against the total damages (reduced by any comparative negligence of the plaintiff) rather than against the apportioned damages caused by a particular defendant. For example, suppose defendant A is released from the suit for a settlement of $60,000 and the case goes to trial against defendant B. The jury returns a verdict finding the plaintiff's comparative negligence to be 40%, the negligence of A and B to be 30% each, and the damages to be $300,000. Because the $60,000 setoff would not reduce the plaintiff's $180,000 to below $90,000, B would still have to pay the full $90,000 for his share of the liability. Of course, if the damages were found to be $150,000, the $60,000 from the settlement with A would be set off against the plaintiff's $90,000 recovery which would mean that B's obligation would be reduced from $45,000 to $30,000.

Fabre II, 623 So.2d at 1186 fn. 3 (emphasis added).
In our view, the emphasized portion of the above-quoted hypothetical, when applied to the case before us, unequivocally directs that the $300,000 paid in settlement by other defendants must be applied in reduction of the total damage award returned by the jury.
We acknowledge, as urged by appellee, that footnote 3 of the Fabre II opinion is dicta. Nevertheless, we follow the rule as expressed in our opinion in Aldret v. State, 592 So.2d 264, 266 (Fla. 1st DCA 1991), reversed on other grounds, 606 So.2d 1156 (Fla. 1992), where we stated:
[I]t is well-established that dicta of the Florida Supreme Court, in the absence of a contrary decision by that court, should be accorded persuasive weight. O'Sullivan v. City of Deerfield Beach, 232 So.2d 33 (Fla. 4th DCA 1970); Weber v. Zoning Board of Appeals of the City of West Palm Beach, 206 So.2d 258 (Fla. 4th DCA 1968); Milligan v. State, 177 So.2d 75 (Fla. 2d DCA 1965).
We therefore apply the Fabre II dicta in our resolution of this case.
Appellee has cited to us a number of cases from other jurisdictions in which the courts *659 have reached a result contrary to the one we reach today. We confess that we have not attempted to explore the precise language of the statutory provisions applied by the courts in these several cases so as to compare them with the Florida Statutes. That there are some variations among the states we have no doubt. However, the general thrust of each of these decisions is similar. The courts in these other jurisdictions, with persuasive reasoning, have refused to allow a setoff against an apportioned fault verdict rendered against a non-settling defendant based upon sums paid by settling defendants. See, D.D. Williamson & Co. v. Allied Chemical, 569 S.W.2d 672, 674 (Ky. 1978) (the general public policy favoring settlements "militates in favor of allowing the plaintiff to enjoy a favorable settlement or being bound by a poor settlement ..."; non-settling tortfeasor not entitled to setoff from judgment against the amount paid in settlement by co-tortfeasor); Wilson v. Galt, 100 N.M. 227, 668 P.2d 1104, 1109 (App. 1983) (injured person may pursue recovery from each severally liable tortfeasor without reduction; this policy encourages settlements, and discourages other tortfeasors from taking advantage of the good faith efforts of settling tortfeasors; whereas, if reduction is allowed, non-settling tortfeasor would know that he could be found liable only for his share, and also, if settling tortfeasor pays an amount greater than the total damages, as determined by the jury, he would not be required to pay at all); Duncan v. Cessna Aircraft Co., 665 S.W.2d 414, 430 (Tex. 1984) ("plaintiffs bear the risk of poor settlements; logic and equity dictate that the benefit of good settlements should also be theirs"); Thomas v. Solberg, 442 N.W.2d 73, 77 (Iowa 1989) ("... the proportionate credit rule is compatible with comparative fault; the one recovery policy underlying the pro tanto credit rule is not"); Roland v. Bernstein, 171 Ariz. 96, 828 P.2d 1237 (App. 1991) (under statute abolishing joint and separate liability, each defendant is liable only for the portion of the injury he caused, not the whole injury; it would be anomalous to give the benefit of an advantageous settlement to the non-settling tortfeasor, rather than the plaintiff who negotiated it; symmetry requires that if the disadvantage of settlement is the plaintiff's, then the advantage ought to be also; a rule allowing a non-settling tortfeasor to escape liability by reason of the faulty assessment of probabilities by a settling tortfeasor might well discourage settlement by the last tortfeasor, and these considerations have lead most courts considering the question to apply the rule disallowing reduction for settlements).
We are unable to determine from the Fabre II opinion whether any of the arguments briefly outlined above were addressed to the court. We find it highly unlikely, however, given the Fabre II court's carefully drafted interpretation and discussion of section 768.81(3), that the court overlooked any of these arguments, if made, or if not made, that a different result would have been reached if they had been made.
We note that on remand, the trial court is instructed to award judgment for an amount based upon the total damages found by the jury, plus costs, reduced by the social security off-set and the amount of the settlement.[6]
In conclusion, we find that the issue presented here has a potentially significant impact on the resolution of disputes in Florida, and that it is likely to arise with such frequency as to justify a direct ruling by our highest court. Therefore, we certify as one of great public importance the following questions:
(A) IS A NON-SETTLING DEFENDANT IN A CASE TRIED UNDER SECTION 768.81(3) ENTITLED TO SETOFF OR REDUCTION OF HIS APPORTIONED SHARE OF THE DAMAGES, AS ASSESSED BY THE JURY, UNDER THE PROVISIONS OF SECTIONS 768.041(2), 46.015(2) OR 768.31(5)(a), BASED UPON SUMS PAID BY *660 SETTLING DEFENDANTS IN EXCESS OF THEIR APPORTIONED LIABILITY AS DETERMINED BY THE JURY?
(B) DOES THE RULE AS TO SETOFF APPLY EQUALLY TO BOTH ECONOMIC AND NON-ECONOMIC DAMAGES?
REVERSED and REMANDED with directions to enter an amended judgment in accordance with this opinion.
ALLEN and MICKLE, JJ., concur.
NOTES
[1] The parties agreed at trial that the jury would be instructed to render a verdict as to each party according to such party's percentage of fault. The case was thus tried in conformity to section 768.81(3), Florida Statutes (1991).
[2] More particularly, the damages were assessed as follows: funeral expenses, $3,753.00; past loss of support of decedent, $39,100; future loss of support of decedent, $160,000; pain and suffering of Joyce Wells, $250,000; pain and suffering of Tara Wells, $100,000; pain and suffering of Patricia Wells Dillon, $7,000; pain and suffering of Jerrod Wells $7,000; pain and suffering of Paula Wells Anderson, $7,000.
[3] The amount the trial court awarded in total was $509,267.70. There was a miscalculation in arriving at this figure. Ninety percent of the total damages is $516,467.70; when $9,000 is added to that sum and $17,000 is subtracted, the total becomes $508,467.70.
[4] Section 46.015(2), Florida Statutes (1991), reads:

(2) At trial, if any person shows the court that the plaintiff, or his legal representative, has delivered a written release or covenant not to sue to any person in partial satisfaction of the damages sued for, the court shall set off this amount from the amount of any judgment to which the plaintiff would be otherwise entitled at the time of rendering judgment.
Section 768.041(2), Florida Statutes (1991), reads:
(2) At trial, if any defendant shows the court that the plaintiff, or any person lawfully on his behalf, has delivered a release or covenant not to sue to any person, firm, or corporation in partial satisfaction of the damages sued for, the court shall set off this amount from the amount of any judgment to which the plaintiff would be otherwise entitled at the time of rendering judgment and enter judgment accordingly.
Section 768.31(5), and 5(a) Florida Statutes (1991), read:
(5) RELEASE OR COVENANT NOT TO SUE.  When a release or a covenant not to sue or not to enforce judgment is given in good faith to one of two or more persons liable in tort for the same injury or the same wrongful death:
(a) It does not discharge any of the other tortfeasors from liability for the injury or wrongful death unless its terms so provide, but it reduces the claim against the others to the extent of any amount stipulated by the release or the covenant, or in the amount of the consideration paid for it, whichever is the greater; and,
[5] Section 768.81(3), Florida Statutes, reads:

(3) APPORTIONMENT OF DAMAGES.  In cases to which this section applies, the court shall enter judgment against each party liable on the basis of such party's percentage of fault and not on the basis of the doctrine of joint and several liability; provided that with respect to any party whose percentage of fault equals or exceeds that of a particular claimant, the court shall enter judgment with respect to economic damages against that party on the basis of the doctrine of joint and several liability.
[6] Because the plaintiff was not comparatively negligent, the computations of the award against TMRMC would begin with the total damages awarded by the jury, $573,853.00, to which must be added court costs of $9,000.00, making a sum of $582,853.00 for damages and costs. From this amount must be subtracted $17,000 for the social security offset, and $300,000 received in settlement, leaving a balance of $265,853.00 as the amount of the judgment to be entered against TMRMC.