659 So.2d 249 (1995)
Joyce WELLS, Petitioner,
v.
TALLAHASSEE MEMORIAL REGIONAL MEDICAL CENTER, INC., Respondent.
No. 83207.
Supreme Court of Florida.
June 15, 1995.
Rehearing Denied August 24, 1995.
*250 Jon D. Caminez and Barry Gulker of Caminez, Walker & Brown, Tallahassee, for petitioner.
Jesse F. Suber and J. Steven Carter, Tallahassee, for respondent.
Jonathan C. Hollingshead and Jennifer Herndon McRae of Fisher, Rushmer, Werrenrath, Keiner, Wack & Dickson, P.A., Orlando, amicus curiae, for Fla. Defense Lawyers Ass'n.
Raymond V. Miller and Jeffrey Dickstein of Kaufman, Miller, Dickstein & Grunspan, P.A., Miami, and Barbara Green of Barbara Green, P.A., Coral Gables, amicus curiae, for Academy of Fla. Trial Lawyers.
GRIMES, Chief Justice.
We review Tallahassee Memorial Regional Medical Center, Inc. v. Wells, 634 So.2d 655 (Fla. 1st DCA 1994), in which the district court of appeal certified the following questions to be of great public importance:
(A) IS A NON-SETTLING DEFENDANT IN A CASE TRIED UNDER SECTION 768.81(3) ENTITLED TO SETOFF OR REDUCTION OF HIS APPORTIONED SHARE OF THE DAMAGES, AS ASSESSED BY THE JURY, UNDER THE PROVISIONS OF SECTIONS 768.041(2), 46.015(2) OR 768.31(5)(a), BASED UPON SUMS PAID BY SETTLING DEFENDANTS IN EXCESS OF THEIR APPORTIONED LIABILITY AS DETERMINED BY THE JURY?
(B) DOES THE RULE AS TO SETOFF APPLY EQUALLY TO BOTH ECONOMIC AND NON-ECONOMIC DAMAGES?
Id. at 659-60. We have jurisdiction under article V, section 3(b)(4) of the Florida Constitution.
In 1991, Joyce Wells filed suit against Tallahassee Memorial Regional Medical Center, Inc. ("TMRMC"), Dr. Donald Alford, M.D., and Anesthesiology Associates and its employees Raymond Johns and Dr. Brence Sell, M.D., for the wrongful death of her husband. Prior to trial, Wells settled with Dr. Alford for $250,000, $50,000 of which was allocated to economic and $200,000 to noneconomic damages. Wells also settled with Anesthesiology Associates and its employees for $50,000, without apportionment.
TMRMC was the sole defendant at trial. However, the jury was instructed to apportion fault, if any, among all the defendants.[1] The jury returned a verdict in favor of Wells, finding TMRMC 90% at fault, Dr. Alford 5% at fault, and Anesthesiology Associates 5% at fault. The jury assessed damages at $573,853  $202,853 in economic damages and $371,000 in noneconomic damages. Wells was awarded 90% of $573,853, plus $9,000 in costs, less $17,000 for social security benefits  for a total of $509,267.70.[2]
TMRMC moved for a reduction in judgment, arguing that the judgment should be reduced by $300,000, representing the total amount paid by the settling defendants. The trial court denied the requested setoff.
On appeal, TMRMC contended that the trial court erred in denying the requested setoff. The district court of appeal held that sections 46.015(2), 768.041(2), and 768.31(5), *251 Florida Statutes (1991) (the setoff statutes), required that "the $300,000 paid in settlement by other defendants must be applied in reduction of the total damage award returned by the jury." Tallahassee Memorial Regional Medical Ctr., Inc., 634 So.2d at 658. In reversing the judgment, the district court of appeal found that footnote 3 of this Court's opinion in Fabre v. Marin, 623 So.2d 1182 (Fla. 1993), was controlling. Id. at 658-59. Recognizing some merit in Wells' arguments, however, the court chose to certify the foregoing questions.
In Fabre, this Court interpreted section 768.81(3), Florida Statutes (Supp. 1988), to mean that each defendant should pay for noneconomic damages only in proportion to the percentage of fault by which that defendant contributed to the accident. In order to do this, it is necessary to determine the percentage of fault of all entities who contributed to the accident regardless of whether they are joined as defendants. Footnote 3 of our opinion in Fabre states:
Thus, we reject the argument that our interpretation of section 768.81(3) when coupled with the right to setoff under section 768.31(5) will lead to a double reduction in the amount of damages. This possibility may be avoided by applying the setoff contemplated by section 768.31(5) against the total damages (reduced by any comparative negligence of the plaintiff) rather than against the apportioned damages caused by a particular defendant. For example, suppose defendant A is released from the suit for a settlement of $60,000 and the case goes to trial against defendant B. The jury returns a verdict finding the plaintiff's comparative negligence to be 40%, the negligence of A and B to be 30% each, and the damages to be $300,000. Because the $60,000 setoff would not reduce the plaintiff's $180,000 to below $90,000, B would still have to pay the full $90,000 for his share of the liability. Of course, if the damages were found to be $150,000, the $60,000 from the settlement with A would be set off against the plaintiff's $90,000 recovery which would mean that B's obligation would be reduced from $45,000 to $30,000.
Fabre, 623 So.2d at 1186 n. 3.
Before this Court, Wells argues that with respect to noneconomic damages, the notion that each party is only responsible for his or her share of the damages dictates that payment by one tortfeasor should only extinguish that tortfeasor's liability and have no effect on another tortfeasor's liability. She asserts that the setoff statutes are only applicable where there is common liability, as in the case of economic damages. Thus, where liability is determined by the jury as a percentage of fault, the comparative fault statute, section 768.81(3), would apply and there would be no setoff.
On the other hand, TMRMC argues that the purpose of the setoff provisions is to prevent duplicate or overlapping compensation for identical damages. The abolition of joint and several liability by section 768.81(3), TMRMC argues, did not alter this long-established prohibition against double recovery. TMRMC points out that a contrary holding would permit Wells to recover an amount in excess of her damages, as determined by the jury.
At first glance, it would appear that the rationale of footnote 3 would foreclose Wells' claim. In fairness, however, the arguments advanced in this appeal were not presented to, nor considered by, this Court in Fabre. The illustration in footnote 3 was intended to demonstrate that our interpretation of section 768.81(3) would not lead to a double reduction in damages. Therefore, despite the dicta contained in footnote 3, we have chosen to address the parties' arguments on the merits.
Several other states, which have abolished joint and several liability in certain respects and require the apportionment of damages between all entities responsible for the accident regardless of whether they are joined as defendants, have already addressed the questions before us. In Hoch v. Allied-Signal, Inc., 24 Cal. App.4th 48, 29 Cal. Rptr.2d 615 (1994), a California court held that setoff statutes much like those of Florida applied only in cases of joint and several liability. *252 The court explained that to apply setoff provisions in situations of several liability would discourage rather than encourage settlement:
If the settlement was "low," the plaintiff will recover less than the noneconomic damages awarded by the jury. If the settlement was "high," the nonsettling defendant will reap the benefit, paying less than their fault-share of the noneconomic damages. This would be inequitable and would provide "little incentive for the injured person to settle with one or fewer than all of the tortfeasors."
Hoch, 29 Cal. Rptr.2d at 624 (footnote omitted) (quoting Wilson v. Galt, 100 N.M. 227, 232, 668 P.2d 1104, 1109 (Ct.App. 1983)). Accord In re Piper Aircraft, 792 F. Supp. 1189 (N.D.Cal. 1992); Espinoza v. Machonga, 9 Cal. App.4th 268, 11 Cal. Rptr.2d 498 (1992).
Arizona courts also refuse to require a setoff of settlement amounts where the liability of the defendants is several rather than joint and several. Neil v. Kavena, 176 Ariz. 93, 859 P.2d 203 (Ct.App. 1993); see also Roland v. Bernstein, 171 Ariz. 96, 828 P.2d 1237 (Ct.App. 1991). In rejecting the argument that the plaintiff will receive an impermissible double recovery if the total amount paid in settlement is not set off, the court in Neil pointed out:
The single-recovery rule, which historically permitted defendants a credit for amounts paid in settlement by other defendants to prevent a plaintiff's excess recovery, was adopted when courts could not allocate liability among defendants; a settling defendant could only offer to pay for a plaintiff's entire, indivisible injury. Now, the respective shares of the liability of multiple defendants can be determined. Each defendant may settle his portion and such settlement neither affects the amount of harm caused by the remaining defendants nor the liability. The settling defendant simply has paid an agreed amount to "buy his peace" and the non-settling defendant has no right to complain that the settling defendant paid too much.
176 Ariz. at 97, 859 P.2d at 207 (citations omitted). The court also rejected the suggestion that the plaintiff will receive a "windfall" if the total amount paid in settlement is not set off:
Settlement dollars are not synonymous with damages but merely a contractual estimate of the settling tortfeasor's liability; they include not only damages but also the value of avoiding the risk and expense of trial. Given these components of a settlement, "there is no conceptual inconsistency in allowing a plaintiff to recover more from a settlement or partial settlement than he could receive as damages."
Id. at 96, 859 P.2d at 206 (citations omitted) (quoting Duncan v. Cessna Aircraft Co., 665 S.W.2d 414, 431-32 (Tex. 1984)).
Though not precisely on point, cases from New Mexico and Iowa as well as the United States Supreme Court employ a rationale similar to that of Arizona and California. McDermott, Inc. v. AmClyde, ___ U.S. ___, 114 S.Ct. 1461, 128 L.Ed.2d 148 (1994); Thomas v. Solberg, 442 N.W.2d 73 (Iowa 1989); Wilson v. Galt, 100 N.M. 227, 668 P.2d 1104 (Ct.App.), cert. denied, 100 N.M. 192, 668 P.2d 308 (1983). The only contrary ruling to our knowledge is Curtis v. Canyon Highway District No. 4, 122 Idaho 73, 831 P.2d 541 (1992), overruled on other grounds, Lawton v. City of Pocatello, 126 Idaho 454, 886 P.2d 330 (1994).
We are persuaded by the logic of what is clearly the majority rule. Moreover, we are convinced that the language of section 768.81(3) and the setoff statutes lead to this result. Section 768.81(3) provides:
APPORTIONMENT OF DAMAGES.  In cases to which this section applies, the court shall enter judgment against each party liable on the basis of such party's percentage of fault and not on the basis of the doctrine of joint and several liability; provided that with respect to any party whose percentage of fault equals or exceeds that of a particular claimant, the court shall enter judgment with respect to economic damages against that party on the basis of the doctrine of joint and several liability.
§ 768.81(3), Fla. Stat. (1989). Under section 768.81(3), each defendant is solely responsible for his or her share of noneconomic damages. The setoff provisions, which were enacted *253 before section 768.81, presuppose the existence of multiple defendants jointly liable for the same damages. Consequently, the setoff provisions do not apply to noneconomic damages for which defendants are only severally liable.
Section 46.015 provides, in pertinent part:
(1) A written covenant not to sue or release of a person who is or may be jointly and severally liable with other persons for a claim shall not release or discharge the liability of any other person who may be liable for the balance of such claim.
(2) At trial, if any person shows the court that the plaintiff, or his legal representative, has delivered a written release or covenant not to sue to any person in partial satisfaction of the damages sued for, the court shall set off this amount from the amount of any judgment to which the plaintiff would be otherwise entitled at the time of rendering judgment.
§ 46.015, Fla. Stat. (1989) (emphasis added). Section 46.015 clearly applies to "a person who is or may be jointly and severally liable with other persons for a claim." Id. (emphasis added). A defendant sued under section 768.81 may not be jointly liable with other defendants for noneconomic damages. Thus, section 46.015 does not apply to noneconomic damages.
Section 768.041 provides, in pertinent part:
(1) A release or covenant not to sue as to one tortfeasor for property damage to, personal injury of, or the wrongful death of any person shall not operate to release or discharge the liability of any other tortfeasor who may be liable for the same tort or death.

(2) At trial, if any defendant shows the court that the plaintiff, or any person lawfully on his behalf, has delivered a release or covenant not to sue to any person, firm, or corporation in partial satisfaction of the damages sued for, the court shall set off this amount from the amount of any judgment to which the plaintiff would be otherwise entitled at the time of rendering judgment and enter judgment accordingly.
§ 768.041, Fla. Stat. (1989) (emphasis added). Under section 768.041, a setoff is made "in partial satisfaction of the damages sued for." Id. Because a party is only liable for noneconomic damages in proportion to the percentage of fault by which that party contributed to the accident, Fabre, 623 So.2d at 1185, a plaintiff cannot sue one party for the noneconomic damages caused by another party. Therefore, section 768.041 does not apply to noneconomic damages.
Finally, section 768.31 provides, in pertinent part:
(5) RELEASE OR COVENANT NOT TO SUE.  When a release or a covenant not to sue or not to enforce judgment is given in good faith to one of two or more persons liable in tort for the same injury or the same wrongful death:

(a) It does not discharge any of the other tortfeasors from liability for the injury or wrongful death unless its terms so provide, but it reduces the claim against the others to the extent of any amount stipulated by the release or the covenant, or in the amount of the consideration paid for it, whichever is the greater... .
§ 768.31, Fla. Stat. (1989) (emphasis added). Under section 768.31, settlement proceeds are set off where defendants are "liable for the same injury or the same wrongful death." Id. However, a plaintiff's claim against one defendant for noneconomic damages can never be the liability of another. As a California court recognized in Espinoza, "[t]he payment of such a claim by one tortfeasor is not the payment of a claim for which `the others' might ever be held jointly and severally liable. Thus, there is no longer any such claim `against the others' to `reduce.'" 11 Cal. Rptr.2d at 502. Hence, section 768.31 does not apply to noneconomic damages. Of course, the setoff statutes do apply to economic damages for which parties continue to be subject to joint and several liability.
Having concluded that the setoff statutes do not apply to noneconomic damages, we must determine how to apportion settlement proceeds between economic and noneconomic damages for purposes of calculating a nonsettling defendant's obligation. We recognize that one of the settlement agreements *254 in this case apportions proceeds between economic and noneconomic damages. We also recognize that in Dionese v. City of West Palm Beach, 500 So.2d 1347 (Fla. 1987), this Court held
that a private unilateral agreement among several plaintiffs to apportion funds paid by one joint tort-feasor is not binding upon the non-settling joint tort-feasors and the courts in determining the claim of the nonsettling joint tort-feasors. Rather, an agreement to apportion the proceeds of a settlement agreement must be found on the face of the settlement agreement and agreed to by all of the parties involved in the settlement.

Id. at 1351 (emphasis added). In Dionese, however, the apportionment in question was among different causes of action  not economic and noneconomic damages. See id. Dionese is therefore distinguishable.
To permit the settling parties to control the allocation between economic and noneconomic damages would invite collusion between plaintiffs and settling defendants. That is, plaintiffs would necessarily seek to maximize the amount of the settlement apportioned to noneconomic damages because none of this amount would be set off against the jury verdict of noneconomic damages. At the same time, it would make no difference to the settling defendants, so they could be expected to be amenable to such apportionment in order to settle the case and even reduce the total amount required to settle. See Espinoza, 11 Cal. Rptr.2d at 502-04.
A fairer solution is to have the allocation based upon the jury verdict. Thus, we hold that the settlement proceeds should be divided between economic and noneconomic damages in the same proportion as the jury's award. In this case, the economic damages comprised 35.349% of the total award. Applying this percentage to the total of the settlements results in the determination that $106,047 of the $300,000 should be allocated to economic damages. Therefore, $106,047 must be set off against the $202,853 award of economic damages. Because the collateral source of social security benefits relates to economic damages, TMRMC should receive an additional setoff of $17,000. See § 768.76, Fla. Stat. (1991). Wells is entitled to recover the full 90% of the noneconomic damages or $333,900, as well as $9,000 in costs. Accordingly, judgment should be entered in favor of Wells in the amount of $422,706.[3]
Accordingly, we answer both of the certified questions in the negative. TMRMC is liable for 90% of Wells' noneconomic damages. TMRMC is also liable for those economic damages remaining after the settlement proceeds apportionable to economic damages are set off. We recede from footnote 3 of Fabre to the extent that it conflicts with this opinion. We quash the decision below and remand for entry of a judgment consistent with this opinion.
It is so ordered.
OVERTON, SHAW, KOGAN and HARDING, JJ., concur.
WELLS, J., concurs specially with an opinion, in which KOGAN, J., concurs.
ANSTEAD, J., concurs specially with an opinion.
*255 WELLS, Justice, concurring specially.
I concur with the majority's reconciliation of sections 46.015(2), 768.31(5), and 768.81(3), Florida Statutes (1991), in this case in which the parties stipulated that the settling defendants would remain on the verdict form although Fabre v. Marin, 623 So.2d 1182 (Fla. 1993), had not yet been decided. It is my view that the majority's interpretation of these statutes is correct in cases in which the jury is instructed to apportion fault in accordance with Fabre's interpretation of section 768.81(3). The majority's reexamination of footnote 3 in Fabre clearly furthers this Court's efforts to reach fair and proper results in a continuing process of refining joint and several tort liability in our state. I also agree that a jury-determined ratio appears to be the best available alternative for dividing a settlement into economic and noneconomic damages.
I write though to state my awareness and concern regarding the current status of tort law in our State. The issue with which we are confronted in applying Fabre to the facts of this case presents but one of the myriad of imponderable reconciliations between common law and statutory law that have plagued the proper administration of justice in tort cases since this Court's construction of the term "party" in Fabre and Allied Signal, Inc. v. Fox, 623 So.2d 1180 (Fla. 1993).[4] I note that, in addition to the reconciling of the applicable statutes, another troubling question specifically highlighted by this case is whether the jury's determination of the percentage of fault, which includes a determination of the fault of individuals who are no longer parties in the proceedings, has sufficient reliability to meet due-process requirements. Settling parties who are no longer parties in the judicial proceedings present no evidence, cross-examine no witnesses, and make no arguments. Nevertheless, pursuant to Fabre, the jury determines in its verdict the settling parties' percentage of fault just as it does with respect to the parties who continue in the proceedings and actively participate in the trial. A procedure which mandates such a verdict is plainly inapposite to my view of due process as it exists in our courts. Due process has as a fundamental premise the adversarial presentation and examination of evidence by the parties whom the jury's verdict addresses.
Accordingly, it is my conclusion that this Court should reexamine its decisions in Fabre and Allied Signal in light of the ponderous and imponderable substantive and procedural problems which have become evident since these decisions were released. The development of tort law is a difficult evolutionary process. To account for its evolving nature, revisions to tort law should be made when the need for such revisions becomes readily apparent.
KOGAN, J., concurs.
ANSTEAD, Justice, specially concurring.
While I concur in the majority's opinion because it makes very good sense, I have some concern that the legislature has not acted to express or clarify its intent as to the continuing application of the provisions of sections 46.015(2), 768.31(5)(a), and 768.041(2), Florida Statutes (1991), in view of the enactment of section 768.81(3), Florida Statutes (1989).
Prior to the adoption of section 768.81(3), a tortfeasor might have had to shoulder more than its proportionate share of fault in responding to a claim. For example, in Walt Disney World Co. v. Wood, 515 So.2d 198 (Fla. 1987), a tortfeasor, Disney, was found to be responsible for only one percent of the total cause of the claimant's injury, but under the doctrine of joint and several liability, Disney was required to pay all of the claimant's damages reduced only by the percentage of cause attributed to the claimant.
To ameliorate such situations, the legislature provided for a scheme of contribution among tortfeasors whereby a tortfeasor who has been required to pay more than a "proportionate" share of damages to a claimant *256 could recover the difference from the other tortfeasors also responsible for the injury. In the Wood case, Disney was entitled to contribution against another tortfeasor, the claimant's fiance, who was found to be 85% responsible for the claimant's injury. As a practical matter, of course, this right to "contribution" is also limited, as all tort rights are, by the financial solvency of the contributing tortfeasors.
Sections 46.015(2), 768.31(5)(a), and 768.041(2) are actually parts of the legislative contribution scheme. Together they provide that settling tortfeasors may buy their "peace" with claimants in good faith settlements, and, in turn, receive immunity from contribution claims. In addition, they provide that the amount of the settlements must be applied to reduce any judgment that might be entered for the claimant against a remaining tortfeasor-defendant. Hence, the remaining tortfeasor-defendant, in effect, receives a "contribution" from the settling tortfeasor in the form of a reduction in the judgment for damages the remaining tortfeasor-defendant may face. This is how the legislative contribution scheme worked before the enactment of section 768.81(3).
With the enactment of section 768.81(3), the need for, and the role of, the contribution scheme set out above has been substantially reduced. Under section 768.81(3), a judgment is to be entered against a particular tortfeasor-defendant only "on the basis of such party's percentage of fault and not on the basis of the doctrine of joint and several liability." Since this tortfeasor-defendant now faces a judgment based only on its "percentage of fault," it, unlike Disney in the Wood case, has no basis for seeking contribution from another tortfeasor who might also have contributed to the cause of the claimant's injury. Such a tortfeasor-defendant is no longer in need of or entitled to contribution, either by a claim against other tortfeasors, or by a reduction in the judgment entered against him in the amount of any settlements made by the claimant with other tortfeasors. Since the "problem" of a tortfeasor paying more than his fair share has been eliminated by the enactment of section 768.81(3), the "solution" to the problem by the scheme of contribution and setoff is no longer needed. The underlying purpose of the contribution scheme and sections 46.015(2), 768.31(5)(a), and 768.041(2) is simply no longer served in such a case. This is the essence of our decision today.
However, it is important to note that the legislature left the contribution scheme described above largely intact when it adopted section 768.81(3). Since there are still instances when this scheme may be properly invoked, it may have been the legislature's intent to let the courts sort this out, as we have attempted to do here. It would be far better, however, since this is an area in which the legislature has broad discretion and authority, and has been very active, for the legislature to expressly indicate the limitations on the continuing use of the contribution scheme, including the setoff provisions of sections 46.015(2), 768.31(5)(a), and 768.041(2).
NOTES
[1] The parties stipulated that the names of the settling defendants and Dr. Sell would appear on the verdict form along with TMRMC even though Fabre v. Marin, 623 So.2d 1182 (Fla. 1993), had not yet been decided.
[2] The trial court erred in calculating damages. Under the trial court's analysis, the correct total should have been $508,467.70. Tallahassee Memorial Regional Medical Ctr., Inc., 634 So.2d at 656 n. 3.
[3] A more detailed description of the calculations used to determine the amount of the judgment is set forth below:

(1) economic damages ($202,853) ÷ total jury award ($573,853) = percentage of jury's award allocated to economic damages (35.349%);
(2) settlements ($300,000) x percentage of jury's award allocated to economic damages (35.349%) = portion of settlements that nonsettling defendant is entitled to set off ($106,047);
(3) economic damages ($202,853) - portion of settlements that nonsettling defendant is entitled to set off ($106,407) - social security benefits ($17,000) = economic damages for which nonsettling defendant is liable ($79,806);
(4) noneconomic damages ($371,000) x percentage of fault apportioned to nonsettling defendant (90%) = noneconomic damages for which nonsettling defendant is liable ($333,900);
(5) economic damages for which nonsettling defendant is liable ($79,806) + noneconomic damages for which nonsettling defendant is liable ($333,900) + costs (9,000) = nonsettling defendant's liability ($422,706).
[4] Bradley R. Johnson, When is a "Party" a "Party" in Florida: Fabre and Allied-Signal, Inc.  Litigation in Florida May Never Be the Same, Trial Advoc. Q., Jan. 1995, at 18; Thomas S. Edwards, Jr. & Sarah Helene Sharp, Fabre/Allied-Signal/Dosdourian Trilogy, 68 Fla.Bar.J. 22 (1994).