PARIENTE, J.
The Task Force on the Management of Cases Involving Complex Litigation (Task Force) has submitted proposed amendments to the Florida Rules of Civil Procedure for our consideration. The proposed amendments provide procedures to improve case management of complex civil litigation. We have jurisdiction and adopt the proposed amendments with some modifications, as explained below. See art. V, § 2(a), Fla. Const. In addition to adopting Florida Rule of Civil Procedure 1.201, we also amend Florida Rules of Civil Procedure 1.100, 1.200, 1.440, Forms for Use with Rules of Civil Procedure 1.997 and 1.998, and Florida Family Law Rule of Procedure 12.100, and adopt a new Form for Use with Rules of Civil Procedure 1.999, Florida Family Law Rule of Procedure 12.201, and Florida Supreme Court Approved Family Law Form 12.928.
BACKGROUND
The background for this petition began with the creation of the Task Force, in September 2006, by then Chief Justice R. Fred Lewis, to “study and examine the efficient and effective management of complex litigation, and the resolution of discovery and other pre-trial matters in litigation.” As stated in the Administrative Order creating the Task Force, “the fair and efficient resolution of complex litigation requires that the court exercise effective supervision and control, and judge and counsel collaborate to develop and implement a comprehensive plan for the conduct of pre-trial and trial proceedings.” See Fla. Admin. Order No. SC06-53 (Fla. Sept. 19, 2006) (citing to the Manual for Complex Litigation).
The Task Force, led admirably by Chair, The Honorable Thomas H. Bateman, III, consisted of twenty members, including judges and lawyers from throughout Flori *559 da with experience in handling and managing complex litigation.[1] The Task Force embarked on a review of the existing Florida Rules of Civil Procedure to determine whether rules, systems, or processes should be created or amended to enhance the effective case management of complex litigation.
The Task Force met frequently over an eighteen-month period and conducted a public hearing and panel discussion in Orlando in June 2007. Simultaneously with the appointment of the Task Force, business courts began to emerge in three Florida urban jurisdictions. A hybrid model, comprised of both a complex case and a business court division, was created in a fourth urban jurisdiction. The Task Force spent a considerable amount of time discussing the pros and cons of complex court divisions and business courts. In addition, several administrative issues relating to time standards for civil cases and pending caseloads were identified and discussed at length.
In April 2008, the Task Force submitted its report titled “Supreme Court of Florida’s Task Force on the Management of Cases Involving Complex Litigation, Report and Recommendations” (Report) to the Court. The Report contained a series of recommendations, with the centerpiece being a recommendation that the Court adopt a rule of civil procedure specifically designed to govern the case management of complex civil litigation and other related rule and form amendments.[2]
Pursuant to direction from the Court, the Task Force filed, in June 2008, a petition proposing amendments to Florida Rules of Civil Procedure 1.100 (Pleadings and Motions) and 1.200 (Pretrial Procedure) and Forms for Use with Rules of Civil Procedure 1.997 (Civil Cover Sheet) and 1.998 (Final Disposition Form), as well as the adoption of a new rule, rule 1.201 (Complex Litigation), and a new form, *560 form 1.999 (Order Designating a Case Complex).
The proposed amendments were published in The Florida Bar News. The Court specifically asked the Florida Bar Civil Procedure Rules Committee (Civil Rules Committee) and the Family Law Rules Committee (Family Rules Committee) to comment on the proposed amendments. The Court received ten comments, including comments by the rules committees.[3]
We have considered each of the comments, including those of the Civil Rules Committee, which unanimously opposed the adoption of rule 1.201 because of its concern that the proposed rule would “micromanage cases” and would “reduce the trial court’s discretionary control over its cases.” We have also considered the minority view of one of the Task Force members, Judge Webster, who likewise believed that the rule was unnecessary and that the goals of this new rule could be better achieved through the use of rule 1.200 (Pretrial Procedure).[4]
We have concluded that, although there are other possible solutions to the problem of management of complex civil cases, the adoption of a specific rule of case management for use in cases that require more judicial labor should promote, not frustrate, the efficient and timely disposition of those cases. We take this opportunity to reemphasize the importance of judicial case management of all cases and the charge of Florida Rule of Judicial Administration 2.545, entitled “Case Management,” that the “trial judge shall take charge of all cases at an early stage in the litigation and shall control the progress of the case” until its conclusion. (Emphasis added.) We encourage the use of differentiated case management, a term that “refers to an approach where the court conducts early case screening and assigns certain cases to processing tracks based on that assessment.” Office of Program Policy Analysis and Government Accountability, Report No. 09-06: Judicial Case Management Practices Vary Throughout State; Better Case Data Needed 4 (2009) [hereinafter OPPAGA Report]. We now proceed to explain the amendments.
THE AMENDMENTS
The new rule 1.201 defines “complex litigation” and identifies the criteria to be considered by trial courts in deciding whether a case merits handling as complex; it also establishes the procedures for raising and deciding the issue. The Task Force, through its Definition Subcommittee, after studying rules in place in other jurisdictions, rejected a “laundry list” approach of identifying case types that would *561 qualify as complex in favor of a more flexible approach that emulates California’s definition of complex cases.
The rule is tailored specifically to allow the parties and trial courts to identify, early in the litigation process, those cases needing proactive judicial involvement, the early setting of a trial date, and a specific schedule to which the parties must adhere for the completion of pretrial tasks. The goal is to encourage trial courts to manage their dockets and, with regard to cases designated as complex, provide for uniform case management statewide so as to prevent the situation in which cases requiring more judicial labor create a docketing “logjam.” It is hoped that the extra judicial labor required on the front end of the process will be more than made up for by the conservation of judicial labor over the life of the case, resulting in economies of time and money for the courts and the litigants.
Some of the most significant aspects of the rule include the provision for an initial case management conference at which a definite trial date is to be set within twenty-four months and a requirement that lead trial counsel and a client representative attend that conference. The early setting of a definite trial date was deemed to be a key case management technique to avoid eases languishing on dockets for years. Before the initial case management conference, the rule provides for a mandatory meeting of counsel for all parties for the purpose of discussing the issues listed in the rule and preparing a joint statement to be submitted to the court within fourteen days of the scheduled conference. The rule requires the court, following the case management conference, to issue a case management order establishing certain pretrial deadlines. The rule also provides for a final case management conference at least ninety days prior to the previously established trial date, preceded by another meeting of all counsel to discuss and prepare a case status report prior to the conference.
We carefully reviewed the rule, understanding the extensive effort that Task Force members expended in its drafting, and also considered comments by individual attorneys who made constructive suggestions for changes to the rule. Having taken the comments into consideration, we have made several changes, including several stylistic and editorial changes, to the Task Force’s proposal.
We highlight those changes made in response to the comments received. First, we added a provision to subdivision (a) of rule 1.201 that allows the parties to stipulate to a case’s complexity. The provision will encourage use of the rule in all appropriate circumstances where all the parties agree to be governed by the provisions of the rule.
We also modified subdivision (a) to allow the parties to file a motion to designate an action as complex prior to service on or the filing of an answer by every defendant “subject to a showing to the court why service has not been made on all defendants.” This modification addresses the concern that the inability of the plaintiff to serve all parties or the voluntary nonappearance of one or more parties after service has been made should not foreclose designation of complexity in otherwise appropriate cases.
We further added language to clarify that pro se parties are to be included in any conferences or meetings contemplated by the rule. In subdivision (b)(1) we clarified that “submitted to the court” means “filed with the clerk of the court” to avoid potential confusion. Regarding the concern of one of the commentators that (b)(1)(D) needs clarification, we read the requirement to disclose “any non-parties *562 to whom any of the parties will seek to allocate fault,” as referring to Fabre defendants. See Fabre v. Marin, 623 So.2d 1182, 1185 (Fla.1993), receded from on other grounds by Wells v. Tallahassee Mem’l Reg’l Med. Ctr., 659 So.2d 249, 251-52 (Fla.1995). Accordingly, we deem any clarification of this subdivision to be unnecessary.
In subdivision (b)(3) we deleted the requirement that counsel provide the court with assurances at the case management conference that the trial date has been discussed with their clients in the event the case is set to be tried before a jury because the client or authorized client representative is required to be in attendance, making the assurance redundant. In addition, we included a provision in subdivision (c) requiring the case management order to include deadlines for the completion of all discovery, not just expert witness depositions, because these deadlines are in conformity with the intent of this rule.
We added a provision to subdivision (d) clarifying that, in accordance with preexisting case law, a party is not precluded from calling impeachment or rebuttal witnesses not identified in the case status report if the need for them testimony could not have been reasonably foreseen at the time the case status report was prepared. However, we anticipate that parties will comply with the underlying intent of the rule, which is to list all witnesses and to avoid any improper tactics associated with late-filing or failure to file the names of all known witnesses.
We deleted the court commentary proposed by the Task Force that encourages the “use of general magistrates, special masters, mediators, arbitrators or other neutrals” who can often “assist the parties and the trial judge with resolving time consuming disputes” and “help expedite the adjudication of contentious discovery issues.” We certainly agree with the Task Force’s comment about the role of neutral individuals who can assist the court in the resolution of discovery disputes. However, we do not deem it appropriate to include this type of commentary as that of the Court as an addendum to the adoption of this rule.
Further, the Task Force proposed and we adopt form 1.999 (Order Designating a Case Complex), which is to be utilized by circuit courts when designating a case complex, and direct the clerks of court to report to the Office of the State Courts Administrator, along with their Quarterly Pending Caseload Reports, the number of cases designated as complex during the quarter and identifying such cases by case style, number, and court division, beginning with the quarter ending on December 31, 2009. The use of this form will be critical in keeping track of the number of complex cases pending and tracking their status in the trial courts. However, we note that without a uniform statewide judicial case management system, the courts will continue to be hampered in then ability to manage their cases in a meaningful way. See OPPAGA Report at 6-10.
In addition, in response to concerns of the Family Rules Committee and four circuit judges (Judges Kreeger, Karlan, Starnes, and McNeal), we adopt Florida Family Law Rule of Procedure 12.201 to exclude family law cases from application of rule 1.201, the complex litigation rule. We are confident that the Task Force never intended that family cases would be included within the scope of the proposed rule. We likewise amend Florida Family Law Rule of Procedure 12.100 (Pleadings and Motions) to exempt family law cases from the requirement in rule 1.100(c)(3) that parties must file a final disposition form with the clerk if the action is settled without a court order or judgment being *563 entered or if the action is dismissed by the parties.
In accordance with the Task Force proposals, we also amend rule 1.100 (Pleadings and Motions) to require a Final Disposition Form (form 1.998) to be completed when a case settles out of court or is voluntarily dismissed; rule 1.200 (Pretrial Procedure) to refer the reader to rule 1.201 for the factors used in determining whether a case is complex; and form 1.998 (Disposition Form) to require the prevailing party to complete and file the form at the conclusion of a case and adding two additional categories to section II to track final dispositions reached through settlement (the same two categories being added to rule 1.100). We also adopt on our own motion an amendment to rule 1.440 (Setting Action for Trial) to exclude complex litigation cases because rule 1.201 provides its own procedures for setting these cases for trial.
We also address the proposed amendments to form 1.997 (Civil Cover Sheet), which has not been substantially amended in over twenty years. All those parties and commenters agree that the current civil cover sheet is outdated and needs revision.
We approve the Task Force’s recommendation to add many more specific case categories and case subcategories to more specifically identify the types of civil cases being filed.[5] Upon our review, which has included reviewing the federal courts’ civil cover sheet and the civil cover sheets used in other states, we have modified some of the categories proposed and added others, with accompanying definitions.
We emphasize the new requirement that an attorney or pro se litigant certify the accuracy of the designation of case type and other information contained on the cover sheets, Form 1.997 (Civil Cover Sheet) and Form 12.928 (Family Court Cover Sheet). The information in the civil cover sheet is required for use by the clerks of court for the purpose of reporting the judicial workload data pursuant to section 25.075, Florida Statutes (2008), and the Court relies on this workload data in' preparing its certificate of need for additional trial court judges. We believe updating this form, and adopting form 12.928, discussed below, are important steps in obtaining reliable and more accurate case data. Reliable case data is also “critical to efficiently manage circuit caseloads.” OP-PAGA Report at 8. However, as with our comments regarding the designation of cases as complex, without a uniform statewide case management system, the information contained in the civil cover sheet and family court cover sheet will be of limited usefulness for meaningful and effective case management.
While we remove all family categories from the civil cover sheet, we adopt new Florida Supreme Court Approved Family Law Form 12.928 (Family Court Cover Sheet) which consists of all of the family and juvenile case categories being deleted from form 1.997, as well as new case subcategories to more specifically identify the types of family and juvenile cases being filed. Form 12.928 also requires the plaintiff or petitioner to identify all related cases to promote implementation of the *564 goals of the unified family court. See also Fla. R. Jud. Admin. 2.545(d) (requiring a petitioner in a family case to file a notice of related cases).
We have delayed the date on which the amended Civil Cover Sheet and new Family Court Cover Sheet shall become effective until January 1, 2010, at 12:01 a.m. We direct the clerks of court of all Florida circuit courts to continue reporting case statistics to the Office of the State Courts Administrator for all case categories listed on the current form 1.997 Until December 31, 2009. See § 25.075, Fla. Stat. (2008); Fla. R. Jud. Admin. 2.245. Thereafter, commencing with the period beginning January 1, 2010, the clerks of court are to report case statistics to the Office of the State Courts Administrator for all categories and subcategories of cases on form 1.997 (Civil Cover Sheet) and form 12.928 (Family Court Cover Sheet) as shown in the appendix to this opinion.
CONCLUSION
We thank the Task Force on the Management of Cases Involving Complex Litigation for its hard work, diligence, and thorough recommendations. Upon consideration of the Task Force’s proposals, the comments filed by interested parties, and the presentations made at oral argument in this case, we adopt amendments to Florida Rules of Civil Procedure 1.100 (Pleadings and Motions), 1.200 (Pretrial Procedure), and 1.440 (Setting Action for Trial), Florida Family Law Rule of Procedure 12.100 (Pleadings and Motions), and Forms for Use with Rules of Civil Procedure 1.997 (Civil Cover Sheet) and 1.998 (Final Disposition Form). We adopt new rules 1.201 (Complex Litigation) and 12.201 (Complex Litigation), form 1.999 (Order Designating A Case Complex), and Florida Supreme Court Approved Family Law Form 12.928 (Family Court Cover Sheet).
Because rules 1.201, 1.440, 12.100, and 12.201 and forms 1.997, 1.998, and 12.928 have been modified from their previously published proposed format or were not published for comment prior to their adoption, we direct that these rules and forms, as shown in the appendix to this opinion, be published in The Florida Ba,r News. Any interested person may file comments on the rules and forms with this Court within sixty days of the date of this opinion; however, the additional comments shall be limited only to the changes we have made subsequent to the initial publication and should not consist of reargument.[6]
The Florida Rules of Civil Procedure and Florida Family Law Rules of Procedure are hereby amended as set forth in the appendix to this opinion. New language is indicated by underscoring; deletions are indicated by struck-through type. New forms 1.999 (in legislative format) and 12.928 (fully engrossed) are adopted as set forth in the appendix to this opinion. The amendments to form 1.997 (Civil Cover Sheet) and new form 12.928 (Family Court Cover Sheet) shall become effective January 1, 2010, at 12:01 a.m. The remainder of *565 the amendments shall become effective immediately.
It is so ordered.
LEWIS, LABARGA, and PERRY, JJ., concur.
LABARGA, J., specially concurs with an opinion.
POLSTON, J., dissents with an opinion, in which QUINCE, C.J., and CANADY, J., concur.

. The other members of the Task Force were The Honorable Thomas M. Lynch, IV, Vice Chair and Circuit Judge, Seventeenth Judicial Circuit; Theodore Babbitt, West Palm Beach; Mitchell Berger, Berger Singerman, Fort Lauderdale; Anthony J. Carriuolo, Berger Singerman, Fort Lauderdale; Gene Cavalluc-ci, Vice President and General Counsel, Harris Corporation, Melbourne; Philip Freidin, Freidin & Dobrinsky, P.A., Miami; Charles J. Grimsley, General Counsel, United Automobile Insurance Group, North Miami Beach; Merrick L. Gross, Akerman Senterfitt, Miami; Greg Holland, General Counsel, MPS Group, Inc., Jacksonville; The Honorable Edward C. LaRose, Appellate Judge, Second District Court of Appeal; Jason Murray, Carlton, Fields, P.A., Miami; Stephen E. Nagin, Miami; The Honorable James E.C. Perry, Justice, Florida Supreme Court (then Circuit Judge, Eighteenth Judicial Circuit); The Honorable Victoria Platzer, Circuit Judge, Eleventh Judicial Circuit; The Honorable Renee A. Roche, Circuit Judge, Ninth Judicial Circuit; Neal Roth, Grossman Roth Olin Meadow, Miami; Harvey Ruvin, Clerk of Court, Dade County; Maria A. Santoro, George, Hartz and Lun-deen, Tallahassee; and The Honorable Peter D. Webster, Appellate Judge, First District Court of Appeal.

. Other significant recommendations, which the Court is unable to address in a rules case, but which are also extremely significant to the fair, efficient, and effective administration of justice, include several important recommendations related to technology-specifically, e-discovery, electronic data retrieval, e-filing, and a unified statewide case management system. These are: (1) to "develop sound principles for e-discovery practices as statewide court technology systems become upgraded to accommodate electronic filing, indexing, retrieval, storage, etc.”; (2) "to strongly encourage and support pursuit of an electronic data system that empowers the courts and their users to access electronic data”; (3) to create an implementation plan to address e-filing and requiring that a "single portal for the submission of electronic court records be developed and implemented”; and (4) to "continue to pursue a unified statewide case management system.”

. The others who filed comments were: the Family Law Section of The Florida Bar; The Honorable Diane M. Kirigin, General Magistrate, Delray Beach; The Honorable Karen E. Rushing, Clerk of the Circuit Court and County Comptroller, Sarasota County; The Honorable Judith L. Kreeger (Circuit Judge, Eleventh Judicial Circuit), The Honorable Sandy Karlan (Circuit Judge, Eleventh Judicial Circuit), The Honorable Hugh E. Starnes (Circuit Judge, Twentieth Judicial Circuit), and The Honorable Raymond Thomas McNeal (Circuit Judge, retired), filing jointly; Henry P. Traw-ick, Jr., an attorney and former member of the Civil Rules Committee; Levin Tannen-baum, a law firm in Sarasota; and Bill Wagner, an attorney in Tampa.

. Judge Webster also opposed the creation of complex litigation divisions because, in his view, such divisions have the potential of “skimming the cream from the top of our available judicial labor pool” and creating the "impression that some litigants are getting more justice from the system than are others.” By our adoption of the rule, we express no view on the wisdom of individual circuits assigning judges to complex litigation divisions within the civil division.

. The form was first adopted in 1986. See Fla. Bar re Amendment to Rules of Civil Pro. Rule 1.100(c) (Caption of Pleadings), 488 So.2d 57 (Fla.1986). It was amended to change tire citation to certain rules in the instructions for the form in 1996 and again, in 2005, to add one new category: "Challenge to proposed constitutional amendment.” See In re Amendments to Fla. Rules of Civil Pro. (Two Year Cycle), 917 So.2d 176, 188 (Fla.2005); In re Amendments to Fla. Rules of Civil Pro., 682 So.2d 105, 142-43 (Fla.1996).

. An original and nine paper copies of all comments must be filed with the Court on or before July 27, 2009, with a certificate of service verifying that a copy has been served on the Chair of the Task Force on the Management of Litigation in Complex Cases, Thomas H. Bateman III, Messer, Caparello & Self, P.A., 2618 Centennial Place, Post Office Box 15579, Tallahassee, Florida 32317-5579. The Task Force Chair has until August 17, 2009, to file a response to any comments filed with the Court. Electronic copies of all comments also must be filed in accordance with the Court's administrative order In re Mandatory Submission of Electronic Copies of Documents, Admin. Order No. SC04-84 (Fla. Sept. 13, 2004).