776 So.2d 1043 (2001)
Victor DOIG, M.D., Appellant,
v.
Mary CHESTER, etc., Appellee.
No. 5D99-116.
District Court of Appeal of Florida, Fifth District.
February 2, 2001.
Jennifer S. Carroll and Diane F. Medley, of Law Office of Jennifer S. Carroll, P.A., West Palm Beach, for Appellant.
Julie H. Littky-Rubin and Lake Lytal, Jr., of Lytal, Reiter, Clark, Fountain & Williams, L.L.P., West Palm Beach, for Appellees.

ON SECOND MOTION FOR REHEARING
HARRIS, J.
We agree with the parties that our former opinion both contained errors and was incomplete. We appreciate the opportunity *1044 of correcting our opinion by substituting the following:
Mary Chester asserted that her husband died as the result of medical malpractice and blamed both Dr. Doig and Halifax Hospital (through its staff). Chester settled with Halifax for $150,000 during presuit proceedings and then arbitrated with Doig and recovered $507,321; $250,000 of this award was for non-economic damages. The issue is whether the Halifax recovery should be offset against the Doig award and, if so, to what extent.
Chester suggests that we should construe section 766.207(7)(b), Fla.Stat., as permitting the arbitration panel to consider a non-economic damages award greater than $250,000 for the purpose of applying an offset or, at least, we should apply the formula for deciding the offset approved in Wells v. Tallahassee Memorial Regional Medical Center, Inc., 659 So.2d 249 (Fla. 1995). In addition, it now appears that we must consider the consequence of St. Mary's Hospital, Inc. v. Phillipe, 769 So.2d 961 (Fla.2000), as it relates to this claim. Legislation is protected from unwarranted judicial construction primarily by judges adhering to their oaths. We may not construe a statute unless we first find it ambiguous and even then our efforts must be to "find" legislative intent. We may not ignore a statute altogether unless we first find it unconstitutional. The constitutionality of this statute is not at issue. See University of Miami v. Echarte, 618 So.2d 189 (Fla.1993).
Here, the legislative policy seems clear even if not universally popular. The policy is to encourage parties to arbitrate medical malpractice claims. We believe this policy is to encourage the entire medical malpractice claim, and not just a portion of it, to be arbitrated. To induce the claimants to arbitrate, they are given a speedy resolution of their claims and awarded attorney's fees, all costs of arbitration and interest on accrued damages. To induce the defendants to arbitrate, they are relieved of punitive damages and assured that there will not be an award of greater than $250,000 in non-economic damages per incident. We believe that by using the term "per incident" the legislature was referring to the incident which caused the injury. By making the noneconomic damage award, as well as the economic damage award, joint and several in the context of an arbitration proceeding, the statute makes it clear that this cap applies to multiple defendants involved in the "incident" if they are included in the arbitration proceeding. See section 766.207(7)(h), Florida Statutes. The limitation is on the amount of total non-economic damages per incidentnot on the individual defendant's share of non-economic damages. The arbitration procedure does not contemplate an allocation of fault between or among the various defendants for the purpose of limiting their percentage of responsibility for plaintiff's injuries. The policy behind the arbitration statute simply will not be served if noneconomic damages in excess of the $250,000 limit for any incident may be recovered from others whose negligence contributed to the incident by plaintiffs choosing mix and match remedies. Thus, although the supreme court has in St. Mary's Hospital construed the legislative purpose of the statute to mean a cap of $250,000 per incident per claimant, it has not yet limited "per incident" to mean "per action against anyone responsible for the injury."
This arbitration proceeding sets three limits on the amount of claimant's recovery for non-economic damages "per incident." If neither party seeks arbitration, then the action proceeds as any civil lawsuit limited only by the jury verdict on non-economic damages. See Section 766.209(2). If both parties agree to arbitration, there is a limit of $250,000 for non-economic damages. See Section 766.207(7)(b). There is a $350,000 limit for non-economic damages if the claimant refuses to arbitrate and instead *1045 proceeds to trial.[1]See Section 766.209(4)(a). In any event there is no limit on economic damages. Therefore, if a claimant suffers damages as a result of medical malpractice, he or she has an option of remedies: if no demand for arbitration is made by the medical provider, proceed to trial for whatever the jury might award for non-economic damages; if a demand for arbitration is made, reject it and proceed to trial for a maximum award of $350,000 for non-economic damages; or accept arbitration with a limit of $250,000 in non-economic damages. But whatever option is chosen, claimant is entitled to only one complete recovery of the non-economic damages actually suffered. This is an easy application if there is only one medical provider involved or if the same remedy is sought against all potential defendants; it becomes difficult only if different remedies are sought against joint tortfeasors.
Here, there were two potential defendants and a mix and match remedy was chosen. In her "jury limits" action against Halifax (neither requested arbitration), Chester and the hospital settled for $150,000. For her claim against Doig, she agreed to binding arbitration with its attendant advantages but saddled with a per incident limit of $250,000 for non-economic damages, which was awarded.
The arbitration provision requires that economic damages be offset by all collateral source payments. The Halifax settlement does not meet the definition of collateral source payments set out in section 766.202(2), Fla.Stat. Chester urged below that the settlement should be offset against all arbitration damages but only if the $250,000 cap is ignored. In other words, she claims that her non-economic losses may actually exceed the cap and that although she admits she cannot receive an award for non-economic damages in arbitration greater than the cap, her offset should come from her true total damages, whatever they are, and her award should be the difference but in no event should her recovery exceed her economic damages plus $250,000 in non-economic damages. While this may have been a reasonable statutory scheme, it was not the one chosen by the legislature. Further, and we believe fatal to her position, is the fact that there has not been a determination by anyone that her non-economic damages exceed $250,000.
Because the arbitration panel determined that the statute setting up the arbitration proceeding used herein did not specifically permit an offset for settlements with those other defendants allegedly responsible for the injuries at issue, it refused to consider sections 46.015(2) and 768.041, Fla.Stat. Although we understand the panel's reluctance (these statutes direct the court to reduce the judgment by the amount of any settlement and makes no reference to an "arbitration panel"), the intent of the legislature is to prevent double recovery for the same damages.[2] Reference to "the court" in the statutes requiring offsets does not indicate that a double recovery is appropriate if done by an arbitration panel.
Wells, however, in a case in which the jury decided the percentage of fault between the defendants responsible for the damages, held that the comparative fault provisions of section 768.81(3) would apply and that there could be no offset against one tortfeasor's share of the non-economic damages for the proceeds from a settlement with another joint tortfeasor because *1046 there was no joint and several liability for non-economic damages.[3]
But here there is joint and several liability in the context of the arbitration proceedings. Here, there has been no determination made by anyone as to the percentage of fault between the doctor and the hospital. Doctor Doig is 100% responsible for the maximum possible arbitration award of non-economic damages. And this would have been the maximum award had the settling hospital also been a party to the arbitration. By voluntarily submitting to arbitration, plaintiff agreed to a maximum award for non-economic damages for the "incident" to be $250,000. It appears logical that plaintiff may not choose the benefits of arbitration and yet increase this limitation by merely seeking separate remedies (arbitration and settlement) to recover for the same incident.
Under the facts of this case, Chester can receive no more than the total amount recovered in arbitration, $507,321. This is the maximum damage that she has established in any fashion. As for the hospital, claimant chose the option that would limit her only by the jury award but settled for $150,000. This established only that plaintiff suffered damages and that the hospital would contribute $150,000 toward those damages, whatever they ultimately proved to be. Therefore, when Chester agreed that the arbitration panel, and not the court, would determine her total damages, she had already received $150,000 toward that amount.
Since we are here concerned with arbitration, Chester is not entitled to both the total arbitration award for non-economic damages which was not reduced by an apportionment of fault and also that portion of the settlement award representing non-economic damages[4] because that would, contrary to statute, permit more than $250,000 in non-economic damages for a single incident.
Although claimant has suffered non-economic damages as a result of Mr. Chester's death, she has suffered them only once and, in arbitration, is entitled to only one complete recovery. Suppose she had gone to jury verdict against the hospital only without requesting an allocation of fault among joint tortfeasors and received an award of $500,000 in non-economic damages. This would have been a jury determination as to her total non-economic damages and a jury finding that the hospital was responsible for all of it. If she later went to arbitration and the panel awarded her $250,000 in non-economic damages against another joint tortfeasor, is she entitled to both? We believe under the statutory arbitration provision, that if a plaintiff collects the largest award for non-economic damages (not reduced by an allocation of fault) that he can establish, he has been fully compensated for his noneconomic damages and may not collect a second time from another also responsible for the incident resulting in his loss. So also, if he has collected a portion of his non-economic damages (not reduced by an *1047 allocation of fault), to that extent he has been compensated and may look to other responsible parties only for the remainder.
Thus, in this case, we believe that all of the settlement proceeds of $150,000 should be offset against plaintiff's arbitration award without concern for how much of the settlement award was for non-economic or economic damages. That is because there was no allocation of fault and Dr. Doig is responsible jointly and severally for all non-economic damages found by the arbitration panel. We believe that the rule in Wells limiting offsets to only economic damages simply cannot rationally be applied unless there has been a determination by a court as to the total amount of non-economic damages suffered and an appropriate allocation of fault between the various parties and any non-parties found to be partially responsible for the loss.
We certify the following issue to the supreme court as one of great public importance:
IS IT APPROPRIATE TO SETOFF AGAINST THE NON ECONOMIC DAMAGES PORTION OF AN AWARD AGAINST ONE TORTFEASOR IN AN ARBITRATION OF A MEDICAL MALPRACTICE ACTION THE AMOUNT RECOVERED FROM SETTLEMENT FROM ANOTHER RESPONSIBLE FOR THE SAME INCIDENT CAUSING THE INJURY?
REVERSED with directions to setoff the settlement award against the arbitration award but certify the issue to the supreme court.
PETERSON, J., concurs.
GRIFFIN, J., dissents without opinion.
NOTES
[1] If the claimant offers to arbitrate and the defendant refuses, then the claimant is entitled to all non-economic damages returned by the jury together with attorneys fees.
[2] Although the Wells court pointed out that the single recovery rule was adopted when courts could not allocate liability among defendants, that is precisely the case here. The arbitration procedure provides joint and several liability; it does not permit allocation of liability for the purpose of limiting a defendant's obligation for plaintiff's injuries.
[3] Although Wells was a medical malpractice action, it was tried before a jury and no issue relating to arbitration was before the court. Further, even though only one of the defendants went to trial (the other two settled), the jury apportioned fault among the defendant and the settling non-parties. The defendant was held 90% at fault for total damages of $573,853. When the trial court refused to offset the $300,000 that plaintiff recovered from the settlements, defendant appealed. The supreme court, retreating from a footnote in Fabre v. Marin, 623 So.2d 1182 (Fla.1993), held that the single-recovery rule does not apply to non-economic damages because after the apportionment of fault, each defendant is solely responsible for his share of the noneconomic damages. Therefore, only that portion of the settlement which represented a recovery for economic damages was available to offset against defendant's liability for economic damages. That proportion would be determined, said the supreme court, based on the percentage of economic/non-economic damages determined by the jury in the malpractice action.
[4] It is agreed that any settlement award for economic damages should be offset against the Doig award.