GODERICH, Judge.
The defendant, North Miami Medical Center d/b/a Parkway Regional Medical Center [Parkway], appeals, and the plaintiff, Marie Kettly Prezeau, as Personal Representative of the Estate of Philip Ricky Michel, a deceased minor, cross-appeals from an amended final judgment. We affirm the appeal but do not reach the merits of the cross-appeal.[1]
In the underlying action, Prezeau brought suit against Sudha Russell, M.D., and Steven Sheinman, M.D., alleging medical negligence. Prezeau also brought suit against Parkway alleging vicarious liability for the negligent care provided by the emergency room nurses and by Drs. Russell and Sheinman.
After receiving notice of claim, both treating doctors and the claimant agreed to submit to voluntary binding arbitration. This limited the doctors’ liability for non-economic damages to a maximum of $250,000 per incident. § 766.207(7)(b), Fla. Stat. (2000). However, neither Parkway nor the claimant, offered to arbitrate. Instead, Parkway answered the complaint denying liability and asserting several affirmative defenses. Among other defenses, Parkway alleged that it was immune from liability pursuant to the Good Samaritan Statute. § 768.13(2)(b), Fla. Stat. (2000). Parkway also alleged that it was entitled to all the benefits connected with the co-defendant doctors’ agreement to arbitrate, including the statutory limits on damages recoverable by the plaintiff.
Thereafter, Parkway filed a motion to determine the applicability of the statutory cap on damages. Parkway argued that it *1144 was entitled to the benefit of the $250,000 cap on non-economic damages because its liability was vicarious and the defendants upon whom the vicarious liability was based had agreed to arbitrate with the plaintiff. The trial court entered an order rejecting this argument and finding that Parkway, as an allegedly vicariously liable defendant, was entitled to offer to submit to voluntary binding arbitration and take advantage of the benefits of arbitration as the other defendants did, but that having chosen not to make such an offer, Parkway was not entitled to assert the statutory cap.
The case proceeded to trial, and the jury returned a verdict finding Parkway vicariously liable for Dr. Russell’s care and awarding the Estate $86,996.63 in economic damages and awarding Prezeau $4.5 million in non-economic damages for past and future pain and suffering. The trial court denied the defendant’s post-trial motions, including a motion for remittitur. Thereafter, the arbitration panel awarded the decedent $250,000 in non-economic damages. The defendant moved for a setoff of the arbitration award. The trial court granted the setoff and entered an amended final judgment. Parkway appeals, and Prezeau cross-appeals, from the amended final judgment.
First, Parkway contends that the trial court erred by refusing to apply the $250,000 statutory cap on non-economic damages because its vicarious liability stemmed solely from the actions of a tort-feasor that was allowed to assert this cap. We disagree.
Section 766.207(7)(b) provides:
(7) Arbitration pursuant to this section shall preclude recourse to any other remedy by the claimant against any other participating defendant, and shall be undertaken with the understanding that:
[[Image here]]
(b) Noneconomic damages shall be limited to a maximum of $250,000 per incident, and shall be calculated on a percentage basis with respect to the capacity to enjoy life.
(emphasis added).
It is apparent from the clear and unambiguous language of the statute that the benefit of the statutory cap on non-economic damages is solely reserved for a defendant who is conceding liability and participating in arbitration. This benefit is part of the statutory scheme to encourage the arbitration of medical negligence claims. In St Mary’s Hospital, Inc. v. Phillipe, 769 So.2d 961 (Fla.2000), the Florida Supreme Court enumerated the benefits commensurate with arbitration for both claimants and defendants:
In our opinion in Echarte, we explained the incentives for claimants to voluntarily submit to such a process, stating:
The claimant benefits from the requirement that a defendant quickly determine the merit of any defenses and the extent of its liability. The claimant also saves the costs of attorney and expert witness fees which would be required to prove liability. Further, a claimant who accepts a defendant’s offer to have damages determined by an arbitration panel receives the additional benefits of: 1) the relaxed evidentiary standard for arbitration proceedings as set out by section 120.58, Florida Statutes (1989); 2) joint and several liability of multiple defendants in arbitration; 3) prompt payment of damages after the determination by the arbitration panel; 4) interest penalties against the defendant for failure to promptly pay the arbitration award; and 5) limited appellate review of the arbitration award *1145 requiring a showing of “manifest injustice.”
618 So.2d at 194. On the other hand, the most significant incentive for defendants to concede liability and submit the issue of damages to arbitration is the $250,000 cap on noneconomic damages. This limitation provides liability insurers with the ability to improve the predictability of the outcome of claims for the purpose of loss planning in risk assessment for premium purposes.
This predictability can be obtained by interpreting section 766.207(7)(b) so that each claimant is fairly and reasonably compensated for his or her pain and suffering. Such an interpretation would provide increased predictability in the outcome of the claims as the insurers would no longer be contending with the possibility of exorbitant noneconomic damage awards but would have a fixed dollar amount ($250,000), which each claimant’s award could not exceed. Moreover, this interpretation does more to promote early resolution of medical negligence claims, as it provides an equitable result which will in turn further encourage claimants to seek resolution through arbitration.
St. Mary’s Hospital, 769 So.2d at 970 (quoting University of Miami v. Echarte, 618 So.2d 189, 194 (Fla.1993)).
In the instant case, Parkway wants to have its proverbial cake and eat it too. Parkway wants to have the benefit of the $250,000 statutory cap on non-economic damages without having the commensurate detriment of having to concede liability. In other words, Parkway would like to proceed to jury trial, all the while denying its vicarious liability, in hopes of a jury finding in its favor, but have the safety net of the statutory cap in case a jury should find it liable. As St. Mary’s Hospital clearly explains this is not the intent of the arbitration statute. The benefit of the statutory cap is only reserved for those defendants who concede liability and submit to arbitration.
Therefore, we conclude that Parkway, as a vicariously liable defendant, could have demanded arbitration and received the commensurate benefit of the non-economic damages statutory cap. However, as Parkway did not demand arbitration, it was not entitled to the benefit of the statutory cap as the trial court properly determined.
Nevertheless, Parkway urges that this case is like the Fifth District’s recent decision in Doig v. Chester, 776 So.2d 1043 (Fla. 5th DCA 2001), and that Prezeau’s non-economic damages should be limited to $250,000 in any event. We disagree.
In Doig, the plaintiff, Mary Chester, asserted that her husband died as a result of the medical malpractice of Dr. Doig and Halifax Hospital through its staff. Mrs. Chester settled with Halifax Hospital during pre-suit proceedings for $150,000, and then submitted the claim against Dr. Doig to arbitration recovering $507,321 ($250,-000 of which was for non-economic damages). The Fifth District determined that Dr. Doig was entitled to a setoff of the Halifax Hospital settlement reasoning that the plaintiff by voluntarily submitting to arbitration had agreed to a maximum award for non-economic damages for the “incident” of $250,000, and that, where there had been no apportionment of fault, she was prevented from making a double recovery for the same damages. Doig, 776 So.2d at 1046. The Fifth District concluded that Mrs. Chester could receive no more than the total amount recovered in arbitration, $507,321 because that was “the maximum damage that she [had] established in any fashion.” Doig, 776 So.2d at 1046.
In the instant case, however, Prezeau established through a jury verdict that her *1146 non-economic damages exceeded $250,000 thereby making this case factually distinguishable from Doig. The Fifth District in Doig discussed the following hypothetical:
Suppose [the plaintiff] had gone to jury verdict against the hospital only without requesting an allocation of fault among joint tortfeasors and received an award of $500,000 in non-economic damages. This would have been a jury determination as to her total non-economic damages and a jury finding that the hospital was responsible for all of it. If she later went to arbitration and the panel awarded her $250,000 in non-economic damages against another joint tortfeasor, is she entitled to both? We believe under the statutory arbitration provision, that if a plaintiff collects the largest award for non-economic damages (not reduced by an allocation of fault) that he can establish, he has been fully compensated for his non-economic damages and may not collect a second time from another also responsible for “the incident” resulting in his loss. So also, if he has collected a portion of his non-economic damages (not reduced by an allocation of fault), to that extent he has been compensated and may look to other responsible parties only for the remainder.
Doig, 776 So.2d at 1046. This hypothetical clearly contemplates the situation where a plaintiff who sues multiple defendants and chooses to arbitrate against some but not others is not limited to a maximum recovery of $250,000 in non-economic damages for the incident but rather is limited by the maximum amount of damages that he or she can establish not reduced by an allocation of fault. Therefore, we reject Parkway’s argument finding that it lacks merit.
Next, Parkway contends that the trial court erred by denying the defendant’s motion for remittitur where the verdict was excessive and the result of prejudicial, inflammatory evidence. Parkway cites several alleged evidentiary errors; however, only one merits discussion. The defendant argues that the jury was prejudiced by viewing a videotape of the decedent while he was hospitalized after the allegedly negligent care was rendered. A review of the record shows that defense counsel made an objection to the narration of the videotape by the step-father, and that the objection was addressed when plaintiffs counsel offered to mute it. Further, although it is a little unclear from the record, it appears that the defense also objected to the videotape stating that it was so prejudicial that it outweighed any probative value. We find that the trial court acted within its discretion in admitting the videotape as it was relevant to the issue of damages and the probative value outweighed the prejudicial effect.
Lastly, Parkway contends that the trial court abused its discretion by admitting the new opinions of plaintiffs experts that the various health care providers acted with reckless disregard, rather than simple negligence.
In the instant case, the plaintiffs theory of the case was based on simple negligence. The plaintiff alleged that the decedent had presented at the emergency room with a treatable condition and that as a result of Parkway’s negligence, the situation escalated to an emergency situation. Parkway defended by alleging immunity under the Good Samaritan Statute.[2] This required Parkway to prove that there was an emergency situation thereby raising the standard of proof to reckless disregard. At the depositions of their experts, neither party asked the ultimate question of whether the defendants acted with reckless disregard.
*1147 At trial, plaintiffs counsel attempted to ask his emergency room nurse expert whether the treating nurse acted with reckless disregard. Defense counsel objected and a discussion ensued wherein the parties and the court discussed several options including a mistrial and taking supplemental depositions. In the end, the parties agreed that the opinions could be admitted as long as there was no new factual basis for the opinions. Accordingly, any alleged error was waived.
The remaining points lack merit.
Affirmed.

. Prezeau raised one issue on cross-appeal regarding the $250,000 set-off. At oral argument, Prezeau's counsel indicated that should she prevail on the appeal, she wished to abandon the cross-appeal. As such, we do not reach the merits of the cross-appeal.

. § 768.13, Fla. Slat. (2000).