500 So.2d 1347 (1987)
Patsy DIONESE, et Vir., Petitioners,
v.
CITY OF WEST PALM BEACH, et al., Respondents.
No. 68689.
Supreme Court of Florida.
January 22, 1987.
Barbara Green of Daniels and Hicks, P.A., Miami, and Ricci and Roberts, P.A., West Palm Beach, for petitioners.
R. Fred Lewis of Magill & Lewis, P.A., Miami, for respondents.
Patricia A. Seitz and Nancy E. Swerdlow of Steel, Hector & Davis, Miami, for Florida Power & Light Co., amicus curiae.
ADKINS, Justice.
We have for review Dionese v. City of West Palm Beach, 485 So.2d 1361 (Fla. 4th DCA 1986), in which the district court certified the following as a question of great public importance:
Whether a private, unilateral agreement among several plaintiffs to apportion *1348 funds paid by one joint tort-feasor is binding upon non-settling joint tort-feasors and the court in determining the set-off claim of the non-settling joint tort-feasors?
Id. at 1364. We have jurisdiction pursuant to article V, section 3(b)(4) of the Florida Constitution and answer the question in the negative.
Patsy Dionese, a driving instructor, was injured when an automobile driven by a student collided with a partially raised manhole cover located in the City of West Palm Beach. Patsy sued various parties in an attempt to recover damages for her personal injuries and her husband Charles joined the suit seeking damages for loss of consortium.
The Dioneses settled their claim with the driver of the automobile and her insurer for $45,000. The settlement agreement did not apportion the money between Mr. and Mrs. Dionese. The Dioneses proceeded to trial against the City of West Palm Beach. After taking comparative negligence and the failure to wear a seat belt into account, the jury returned a verdict of $57,000 for Mrs. Dionese and $3,800 for her husband.
A post-trial hearing was held to determine the proper method of set-off as required by section 768.041(2), Florida Statutes (1983), which provides:
At trial, if any defendant shows the court that the plaintiff ... has delivered a release ... in partial satisfaction of the damages sued for, the court shall set off this amount from the amount of any judgment to which the plaintiff would be otherwise entitled at the time of rendering judgment and enter judgment accordingly.
At the hearing, the Dioneses notified the court of a private unilateral agreement to apportion $10,000 of the $45,000 settlement proceeds to Mrs. Dionese's claim for personal injuries, and the remaining $35,000 to Mr. Dionese's claim of loss of consortium. A set-off of $10,000 from Mrs. Dionese's verdict of $57,000 would leave a $47,000 judgment against the City. The City would not have to pay any of the $3,800 verdict to Mr. Dionese because the $35,000 settlement would result in a net judgment of zero. Hence, the Dioneses sought entry of a $47,000 judgment against the City. The Dioneses both testified in post trial depositions that they agreed to the $35,000/$10,000 apportionment because Mrs. Dionese was receiving workers' compensation benefits while Mr. Dionese was previously uncompensated.
The City of West Palm Beach asserted that the general $45,000 settlement must be deducted from the combined $60,800 verdict. This calculation would result in entry of a $15,800 judgment against the City. In support, the City notes that the settlement agreement itself did not apportion the proceeds. Further, in response to a pretrial inquiry concerning the existence of any settlement agreements, counsel for the Dioneses explained that his clients had obtained a $45,000 settlement that was a "general release." The Dioneses did not advise the City, or the court, that the settlement had been apportioned until after entry of the jury verdict. In addition, counsel for the settling parties testified that he had refused to execute a post-verdict settlement agreement apportioning the $45,000, and would not have settled at all if the Dioneses had insisted upon an apportionment.
Both existing case law and fairness to the parties involved require us to ignore a private unilateral apportionment of settlement proceeds among plaintiffs, when the settlement agreement itself fails to apportion the proceeds among the plaintiffs.
Both parties argue that Devlin v. McMannis, 231 So.2d 194 (Fla. 1970), supports their position and controls the question presented. In Devlin, a father brought two separate causes of action against the joint tort-feasors responsible for his son's death. In one cause of action, the father was suing as the administrator of the estate of his deceased son. In the second cause of action, the father was suing individually and on behalf of his wife as surviving parents of their minor son. Prior to trial, one of the joint tort-feasors *1349 reached a $20,000 settlement agreement with the father. The agreement specified that $2,000 was in settlement of the estate's claim and $18,000 was in settlement of the parents' claim. The jury returned a verdict of $10,000 to the estate and $5,000 for the parents individually.
The trial court entered a zero verdict after setting off the $20,000 settlement from the $15,000 verdict. The district court of appeal reversed and entered a $8,000 verdict in favor of the estate. This figure was reached by setting off the $2,000 settlement allocated to the estate from the $10,000 verdict returned in favor of the estate. This Court upheld the decision of the district court.
The Dioneses assert that Devlin is supportive of their position because it recognizes and preserves the identity of separate causes of action, and provides that only the amount of the settlement agreement apportioned to a specific cause of action, not the amount of the entire settlement, must be set off against the jury verdict for the corresponding cause of action. The Dioneses fail to recognize that Devlin is easily distinguishable from the instant case. In Devlin, the settlement agreement itself recognized two separate and distinct causes of action and apportioned the proceeds accordingly. Conversely, the settlement agreement in the instant case was a general release that failed to apportion the proceeds. In Devlin, we recognized this crucial distinction when we cautioned:
[W]e are not unaware that there may be occasions where a settlement is effected so as to fail to preserve or otherwise differentiate settlement sums pertaining to the damages distinctive and peculiar to the underlying causes of action. Under such circumstances, subsequent verdicts entered against another joint tort-feasor on the same causes of action may indeed occasion the necessity of offsetting against the total sum of the verdicts the total amount of the prior settlement.
231 So.2d at 196-97. This case presents the situation referred to in Devlin. The settlement agreement failed to apportion the proceeds among the separate and distinctive causes of action. Hence, the total amount of the settlement must be set off from the entire verdict.
City of Tamarac v. Garchar, 398 So.2d 889 (Fla. 4th DCA 1981), is directly on point with Devlin and fully supports our finding that private, unilateral agreements by plaintiffs to apportion settlement proceeds are nonbinding. In City of Tamarac, the plaintiff sued several parties as a result of injuries sustained in an automobile accident and his wife joined the suit with a claim for loss of consortium. At trial, a $1,150,000 settlement agreement was reached which specifically apportioned $400,000 to the husband and $750,000 to the wife. The husband then obtained an adjusted jury verdict of $4,200,000 and the wife was awarded $525,000. The wife was fully satisfied because the jury awarded her less than she had received from the settlement. The City of Tamarac attempted to apply the wife's excess settlement against the husband's jury award. The district court affirmed the trial court's denial of the City's request. As the Dioneses correctly point out, City of Tamarac recognizes that a court may apportion individual settlement proceeds to separate causes of action pursuant to a settlement agreement. However, unlike the present case, and in accordance with Devlin, the method of apportionment was ordered pursuant to the specific terms of the settlement agreement as agreed to by all of the settling parties. Thus, City of Tamarac does not require us to apportion the proceeds in accordance with a private unilateral agreement.
The Dioneses contend that Florida Freight Terminals, Inc. v. Cabanas, 354 So.2d 1222 (Fla. 3d DCA 1978), provides support for their contention that a private unilateral agreement to apportion settlement proceeds is binding. In Cabanas, an airplane crashed into a residence and injured two children and killed their parents and grandparents. The administrator of the estates of the deceased parents and grandparents brought four wrongful death actions against numerous defendants. The *1350 children's guardian, in a separate action, sued to recover for the personal injuries suffered by the children. The action brought by the guardian was pending at the time Cabanas was decided.
Prior to trial, the administrator of the decedents' estates and the children's guardian settled with several defendants for a sum of $745,000. The agreement stipulated that $300,000 was allocated to the decedents' estates and $445,000 was apportioned to the children's claim. The administrator of the estate proceeded to trial against the two remaining defendants. A zero verdict was returned against one defendant and a verdict of $2,034,500 was returned against the remaining defendant. All of the parties agreed that the portion of the settlement agreement allocated to the estate, $300,000, must be set off against the $2,034,500 verdict in favor of the estate. A dispute arose when the defendant sought to have all or part of the $445,000 settlement allocated to the children set off against the verdict in favor of the estate. The trial court denied the defendants' request, and the district court reversed, finding that if the plaintiff prevailed in the new trial that was ordered, the trial court should hold proceedings to determine what portion of the $445,000 should be set off against the estate's verdict.
We reject the Dioneses' contention that Cabanas is inconsistent with the ruling below because Cabanas provided for the apportionment of a general release. Cabanas allowed a portion of the $445,000 settlement in favor of the children's guardian to be set off from the verdict awarded to the estate because "[t]he language of the release specifically includes as part of the settlement, claims for wrongful death." 354 So.2d at 1227. Thus Cabanas is consistent with Devlin, City of Tamarac, and our decision today because it determined the proper method of set-off only after applying the terms of the settlement agreement. Further, although not mentioned by the Court, a finding that none of the $445,000 settlement obtained by the guardian could be set off against the jury verdict awarded to the estate would create a windfall. A windfall would exist because a portion of the damages awarded to the estate in a wrongful death action is contingent upon the survival of minor children, section 768.21(2), (3) and (6)(a)1, Florida Statutes (1985), and, the estate of the deceased may recover on behalf of surviving minor children for the pain and suffering of the surviving minor children. § 768.21(3).
Private unilateral agreements by plaintiffs to divvy up the proceeds of a general settlement agreement are contrary to all concepts of fairness. Private unilateral agreements to apportion settlement proceeds would often result in a windfall recovery. In this case, the jury assessed Mr. Dionese's damages for loss of consortium at $3,800. The settlement allocation the Dioneses advocate  $10,000 to Mrs. Dionese and $35,000 to Mr. Dionese  would result in more than a $30,000 windfall for Mr. Dionese, a recovery about 900% greater than the damages the jury determined he should receive.
The only proper method of ensuring against duplicate recoveries in an undifferentiated lump sum settlement situation is to set-off the total settlement funds against the total jury award. If necessary, the settlement can then be allocated proportionally against the jury verdict for each cause of action tried, thus preserving the distinct nature of the separate claims.
The rights of both the settling and non-settling joint tort-feasors would be adversely effected if we were to allow plaintiffs to privately and unilaterally apportion the proceeds of a settlement agreement containing a general release. The Uniform Contribution Among Tortfeasors Act, section 768.31, Florida Statutes (1983), provides that when two or more persons become jointly or severably liable for the same injury, a tortfeasor who pays more than his pro rata share of the liability has a right of contribution against the other tortfeasor. In order to encourage settlements, the legislature created subsection (5) of section 768.31, which provides that a joint *1351 tort-feasor who is given a release in good faith cannot be sued for contribution. Sobik's Sandwich Shops Inc. v. Davis, 371 So.2d 709 (Fla. 4th DCA 1979). The settlement agreement advocated by the Dioneses  $10,000 to Mrs. Dionese and $35,000 to Mr. Dionese  is totally contrary to the finding of the jury and expressions by the trial judge that Mrs. Dionese suffered far greater damages than her husband. Thus, were we to allow a $35,000/$10,000 apportionment of the proceeds, the settling defendant might be subjected to a claim of bad faith settlement and be forced to defend a claim of contribution brought by the City. See Fleury v. City of Riviera Beach, 396 So.2d 813 (Fla. 4th DCA 1981). In fact, at a post-trial hearing, counsel for the settling defendants testified that fear of a contribution claim led him to reject attempts by the Dioneses to disproportionately apportion the settlement agreement.
The non-settling joint-tortfeasor is also concerned with the terms of any settlement agreement obtained by the plaintiff. This concern surfaced at a pre-trial hearing when counsel for the City requested information about any existing settlement agreements. In fact, disclosure of the terms of an existing settlement agreement may lead the non-settling defendant to alter his plans, and enter into a settlement agreement instead of proceeding to trial. The non-settling defendant's interest in the terms of existing settlement agreements is illustrated by the City's position in this case. Clearly, the City would be adversely affected if the private unilateral agreement were enforced because it would be forced to pay a $47,000 final judgment as opposed to $15,800.
For the reasons expressed, we answer the certified question in the negative and hold that a private unilateral agreement among several plaintiffs to apportion funds paid by one joint tort-feasor is not binding upon the non-settling joint tort-feasors and the courts in determining the claim of the non-settling joint tort-feasors. Rather, an agreement to apportion the proceeds of a settlement agreement must be found on the face of the settlement agreement and agreed to by all of the parties involved in the settlement.
Accordingly, we approve the decision of the district court.
It is so ordered.
McDONALD, C.J., and OVERTON, EHRLICH, SHAW and BARKETT, JJ., concur.