572 So.2d 982 (1990)
Steven S. NAUMAN, M.D., Appellant,
v.
Opal Grace EASON, Individually and As Personal Representative of the Estate of William M. Eason, Deceased, Appellee.
No. 90-23.
District Court of Appeal of Florida, First District.
December 19, 1990.
Rehearing Denied January 25, 1991.
*983 Christopher G. Burns of Saalfield, Catlin, Coulson, Stoudemire & Etheridge, Jacksonville, for appellant.
William A. Bald of Dale & Bald, Jacksonville, for appellee.
JOANOS, Judge.
Steven S. Nauman, M.D. has appealed a post-trial order allocating among appellee Eason's various claims a previously undifferentiated pre-trial settlement paid to Eason by a former defendant. Opal Eason has cross-appealed a directed verdict in Dr. Nauman's favor on the issue of punitive damages, and has alleged error in the trial court's denial of her motion for additur.
After careful consideration of the issues raised on cross-appeal, we affirm without discussion. However, we reverse the trial court's post-trial allocation of the pre-trial settlement received by Eason, and remand for entry of a final judgment which offsets the entire amount of the settlement against the jury's awards to Eason.
In October 1987, Opal Eason, personally and on behalf of her deceased husband's estate, sued St. Vincent's Hospital and Dr. Nauman, stating claims for wrongful death and survival. In April 1989, on the eve of trial, Eason entered into a settlement agreement with St. Vincent's, agreeing to discharge all claims against it in return for $275,000; the agreement did not allocate that amount among Eason's various claims. Trial thereafter proceeded only as to Dr. Nauman (and a second physician not a part of this appeal), and only on the survival claims of Eason and the estate. As to Dr. Nauman, the jury awarded the estate $25,000 in damages, and Eason damages of $175,000.
After trial, Eason moved the court to allocate the undifferentiated $275,000 pre-trial settlement among the claims asserted at that time, so that any offset against the jury awards could be determined. Dr. Nauman then moved for entry of final judgment, alleging that, based on the failure of the settling parties to allocate the settlement in the agreement, the entire $275,000 settlement should be offset against the $200,000 total jury award, leaving a $0 judgment to be entered in Eason's favor.
The court granted the motion for allocation as to Nauman and, after a hearing, allocated the $275,000 settlement as follows: $98,472 to the estate's survival claim (the jury awarded $25,000), $106,678 to Eason's survival claim (the jury awarded $175,000) and $69,850 to both wrongful death claims (which were withdrawn by Eason at trial). The court then offset the survival allocations against the respective jury verdicts, and entered a final judgment in Eason's favor of $68,322 ($175,000 verdict less $106,678 allocated settlement amount). On appeal, Dr. Nauman does not dispute the way in which the trial court allocated the settlement. Rather he contends as a matter of law that, in the absence of allocation by the settling parties at the time of settlement, the entire settlement amount should have been offset against the damages awarded by the jury. We agree.
Section 768.041(2), Florida Statutes (1985), provides that, if a defendant shows that a plaintiff has delivered a release in partial satisfaction of damages sought, the court shall set off this amount from that to which plaintiff is otherwise entitled and enter judgment accordingly. In Devlin v. McMannis, 231 So.2d 194 (Fla. 1970), the plaintiffs settled with one tortfeasor for $20,000, specifying in the agreement that $2000 satisfied the estate's claim, and $18,000 the personal claim. A jury subsequently returned verdicts of $10,000 and $5000, respectively, and the defendant sought and received a setoff of the entire $20,000 settlement *984 against the total jury verdict of $15,000.
The appellate court reversed, finding that the setoff should be directed to the individual verdicts to which it pertained. The Supreme Court affirmed, holding that the setoff contemplated by section 768.041(2) must be interpreted so as to preserve the identity of the separate causes of action, and the distinctive character of the damage elements accruing under each such cause. However, the Court went on to caution:
In reaching the conclusion adhered to above, we are not unaware that there may be occasions where a settlement is effected so as to fail to preserve or otherwise differentiate settlement sums pertaining to the damages distinctive and peculiar to the underlying causes of action. Under such circumstances, subsequent verdicts entered against a joint tort-feasor on the same causes of action may indeed occasion the necessity of offsetting against the total sum of the verdicts the total amount of the prior settlement.

Devlin at 196-97 (emphasis supplied).
Subsequently, in Dionese v. City of West Palm Beach, 485 So.2d 1361 (Fla. 4th DCA 1986) (Dionese I), affirmed 500 So.2d 1347 (Fla. 1987) (Dionese II), the plaintiffs, husband and wife, settled with all but one defendant for an undifferentiated $45,000. A jury verdict was later rendered against the remaining defendant, $57,000 as to wife's claim, and $3,800 as to husband's. It was only after trial that the plaintiffs announced that they had allocated $10,000 of the settlement to the wife's claim and $35,000 to husband's. The trial court declined to recognize the allocation, and set off the entire $45,000 settlement against the total jury verdict.
Plaintiffs appealed, wherein the defendant argued that "when claimants enter into a settlement which fails to preserve or otherwise differentiate settlement sums which pertain to separate causes of action, the total amount of the prior settlement is set-off against the total sum of subsequent verdicts entered against a separate joint tortfeasor." The appellate court agreed, finding that "appellee's argument is supported by Devlin," citing the passage quoted above. Dionese I at 1363.
In affirming Dionese I, the Supreme Court also pointed out the cautionary language in Devlin, that is, that the failure to allocate settlement proceedings in the settlement agreement itself could result in application of the total settlement amount against the total jury verdict. The Court found that the case "present[ed] the situation referred to in Devlin," i.e., the settlement agreement failed to apportion the proceeds among the separate and distinct causes of action, and held that the total amount of the settlement was required to be set off against the total verdict.
The Dionese plaintiffs, as does appellee herein, relied on Florida Freight Terminals, Inc. v. Cabanas, 354 So.2d 1222 (Fla. 3d DCA 1978), to support their contention before the Supreme Court that apportionment of a settlement could be accomplished by the trial court after trial. In Cabanas, a $745,000 settlement agreement allocated $300,000 to estate claims, and $445,000 to certain wrongful death claims. After a jury subsequently awarded $2,000,000 against the remaining defendant, the parties disputed the setoff of the $445,000 allocation. The trial court denied defendant's request for a setoff of the entire $445,000. The appellate court thereafter reversed for a new trial, and stated that, if plaintiff prevailed, the trial court should hold proceedings to determine which portion of the $445,000 should be set off against the verdict.
The Supreme Court distinguished Cabanas in Dionese II, holding that any action by the trial court on remand would be specifically based on language in the pre-trial settlement agreement, so that the agreement itself actually determined the proper method of setoff. The court concluded that "[t]he only proper method of ensuring against duplicate recovery in an undifferentiated lump sum settlement situation is to set-off the total settlement funds against the total jury award." Dionese II at 1350.
*985 Dionese is admittedly not on all fours with the factual situation presented by the instant case. However, in the course of that opinion, the Supreme Court enumerated several reasons why allocation in the settlement agreement is desirable, which we find persuasive herein. First of all, to encourage settlement, section 768.31(5) provides that a joint tortfeasor who is given a release in good faith cannot be sued for contribution. The court noted that the post-trial settlement agreement proposed by the Dionese plaintiffs ran contrary to the jury's finding that the wife suffered more than the husband, a circumstance which might open the settling defendant to a claim of bad faith settlement, allowing the remaining defendant to proceed against it for contribution. Dionese II at 1351.
Similarly, in this case, the jury awarded the estate $25,000 and Eason $175,000, roughly a 13% to 87% division. But the trial court, utilizing only expert testimony speculating as to the intent of the parties as to allocation of the $275,000 settlement, allocated $98,472 to the estate, and $106,678 to Eason personally, virtually an equal division. This is clearly contrary to the jury's conclusion that the wife suffered personally more than the husband, and could expose St. Vincent's to allegations of bad faith and a contribution claim.
The Dionese court also pointed out, as do appellants herein, that a non-settling tortfeasor has reason to be concerned with the terms of any settlement agreement obtained by the plaintiff. The court noted that disclosure of the terms of an existing settlement agreement may lead non-settling defendants to alter their plans, and enter into a settlement agreement instead of proceeding to trial. Dionese II at 1351. The Supreme Court therefore concluded that "an agreement to apportion the proceeds of a settlement agreement must be found on the face of the settlement agreement and agreed to by all of the parties involved in the settlement." Dionese II at 1351.
Based on the foregoing, we find that the trial court erred in attempting to determine, after the trial and without the participation of the settling defendant, exactly how the settling parties intended the settlement to be applied to the plaintiff's causes of action. We therefore reverse the final judgment herein, and remand for entry of a final judgment which reflects the setoff of the entire settlement amount against the total jury verdict against Dr. Nauman.
We are not unaware that, in Florida Power & Light Co. v. Macias, 507 So.2d 1113 (Fla. 3d DCA), rev. dism. sub nom Department of Transportation v. Macias, 513 So.2d 1060 (Fla. 1987), the trial court held a post-trial allocation proceeding. The appellate court remanded with instructions to hold the hearing again, providing proper representation to the plaintiff. The court found on rehearing that Dionese did not require a different result, in that Macias did not similarly involve a unilateral agreement between the parties, but a court apportionment recognizing the various claims. Macias at 1118.
Macias is distinguishable, however, in that apparently the propriety of the post-trial allocation proceeding itself was not presented to the appellate court; the opinion reflects only appellant's allegation that the setoff ordered by the trial court was insufficient. Hence, the propriety of the proceeding itself was not addressed. Therefore, the fact that the court allowed the proceeding to stand does not, in our opinion, overcome the authority provided by Dionese that the allocation of settlement proceeds among various claims must occur in the agreement itself with the participation of the settling defendant.
We therefore reverse and remand for entry of final judgment consistent with this opinion. The cross-appeal is in all respects affirmed.
BARFIELD and WOLF, JJ., concur.