619 So.2d 452 (1993)
ASSOCIATION FOR RETARDED CITIZENS, DADE COUNTY, INC., Appellant,
v.
The STATE of Florida, DEPARTMENT OF HEALTH AND REHABILITATIVE SERVICES, Appellee.
No. 92-1469.
District Court of Appeal of Florida, Third District.
June 8, 1993.
Rehearing Denied July 13, 1993.
*453 Kubicki, Draper, Gallagher & McGrane and Betsy E. Gallagher and Gail Leverett, Miami, for appellant.
Cohen, Berke, Bernstein, Brodie, Kondell & Laszlo and Jeffrey Michael Cohen and John C. Hanson, Miami, for appellee.
Before NESBITT, JORGENSON and LEVY, JJ.
LEVY, Judge.
An indemnitor appeals entry of summary judgment requiring contractual indemnification of its indemnitee for a settlement between the indemnitee and the plaintiffs in a personal injury action. Based upon our finding that a genuine issue of material fact exists with respect to the terms of the settlement between the indemnitee and the plaintiffs, we reverse and remand.
The Association for Retarded Citizens, Dade County, Inc. [hereafter "ARC"] operates a vocational training facility which provides counseling, education, and other services to individuals with varying degrees of mental disabilities. ARC operates this facility under a contract with the Department of Health and Rehabilitative Services [hereafter "HRS"], whereby ARC treats individuals assigned to its program by HRS, the state agency responsible for their care. This case stems from an incident in which a mentally retarded and schizophrenic ARC client was allowed to leave the ARC premises unsupervised and who, while off the premises, assaulted and did physical injury to another individual. The injured individual and his wife [hereafter collectively referred to as "plaintiffs"] brought suit against ARC and HRS, alleging that ARC and HRS:
a) Improperly rendered services to the client;
b) Failed to properly supervise and medicate the client;
c) Failed to properly investigate the client's background prior to placing the client at the facility;
d) Failed to place the client in a proper facility that was appropriate for the client's needs;
e) Failed [to] transfer the client to another facility that was more appropriate to meet the client's needs;
f) Allowed the client to leave the facility alone and unsupervised.
HRS then filed a cross-claim against ARC, alleging that an indemnification agreement contained in the contract between ARC and HRS required ARC to indemnify HRS for any liability incurred to the plaintiffs. The indemnification agreement stated:
[ARC] shall be liable, and agrees to be liable for, and shall indemnify, defend, and hold [HRS] harmless from all claims, suits, judgements [sic] or damages, including court costs and attorneys' fees, arising out of negligence or omissions by [ARC] in the course of the operation of this contract.
Prior to trial, HRS settled with the plaintiffs for $30,000. The plaintiffs then proceeded to trial against ARC, and a jury returned a verdict finding ARC negligent, and awarding damages in the amount of $66,500. Pursuant to Section 768.041(2), Florida Statutes (1991), the trial court set-off the jury verdict by the amount of the HRS settlement, and entered a judgment in favor of the plaintiffs and against ARC for $36,500. See, e.g., Kay v. Bricker, 485 So.2d 486 (Fla. 3d DCA 1986). This judgment has been satisfied, and the plaintiffs are not parties to this appeal.
ARC and HRS then each sought summary judgment on the cross-claim for indemnification. The trial court granted HRS' motion, ordering that "HRS is entitled to contractual indemnity from ARC for damages arising out of the Plaintiffs' claims of negligence against HRS." ARC now appeals, claiming the trial court erred in ordering indemnification.
In order to accurately analyze the indemnification issue, it is necessary to recognize that the plaintiffs' complaint contained two distinct categories of claims. The first category consisted of claims of vicarious liability for the negligence of *454 ARC in conducting the care and supervision of the client. The second category of claims consisted of direct liability on the part of HRS for negligently placing the client in an inadequate treatment program. There is no question that, under Florida law, the particular indemnification agreement at issue could not require ARC to indemnify HRS for HRS' own negligence. University Plaza Shopping Ctr., Inc. v. Stewart, 272 So.2d 507 (Fla. 1973); P.P. Partners, Ltd. v. J.J. Gumberg Co., 611 So.2d 55 (Fla. 3d DCA 1992). In other words, there could be no indemnification for damages stemming from the second category of claims (HRS' direct liability), while there could be indemnification for damages stemming from the first category of claims (vicarious liability due to ARC's negligence).
With this in mind, the essence of ARC's complaint on appeal is this: By being required to indemnify HRS for the full amount of its settlement, ARC was possibly being required to indemnify HRS for monies paid to settle the direct liability claims against HRS  claims for which there could be no indemnification. The dilemma then becomes how to go about apportioning the proceeds of the private settlement agreement between the distinct types of claims, when such apportionment becomes necessary in order to subsequently determine liability as to other causes of action and/or other parties. This dilemma, which requires us to balance the rights of codefendants to fairly apportion liability against the public policy which encourages settlements, is not unfamiliar to the courts of this state.
In Devlin v. McMannis, 231 So.2d 194 (Fla. 1970), the Supreme Court recognized that "there may be occasions where a settlement is effected so as to fail to preserve or otherwise differentiate settlement sums pertaining to the damages distinctive and peculiar to the underlying causes of action." Devlin, 231 So.2d at 196. In dealing with these situations in the past, this court had previously approved the use of an allocation hearing by the trial court in order to apportion the proceeds of a private settlement agreement. See Dan & Sherman, M.D., P.A. v. Serrano, 578 So.2d 300 (Fla. 3d DCA), rev. denied, 589 So.2d 290 (Fla. 1991); Florida Power & Light Co. v. Macias ex rel. Macias, 507 So.2d 1113 (Fla. 3d DCA), rev. dismissed, 513 So.2d 1060 (Fla.), rev. denied, 518 So.2d 1276 (Fla. 1987); Florida Freight Terminals, Inc. v. Cabanas, 354 So.2d 1222 (Fla. 3d DCA 1978). In 1987, however, the Florida Supreme Court held that in apportioning a settlement, "an agreement to apportion the proceeds of a settlement agreement must be found on the face of the settlement agreement and agreed to by all of the parties involved in the settlement." Dionese v. City of West Palm Beach, 500 So.2d 1347, 1351 (Fla. 1987). In Dionese, the Supreme Court approved of our usage of an apportionment hearing in Cabanas, but did so because the proper set-off was to be determined "only after applying the terms of the settlement agreement." Dionese, 500 So.2d at 1350. Therefore, it is now clear that Dionese limits a trial judge to consideration of only the language contained in a settlement agreement, when called upon to render a post-settlement apportionment. Accord Nauman v. Eason, 572 So.2d 982 (Fla. 1st DCA 1990), rev. denied, 583 So.2d 1034 (Fla. 1991).
Turning to the case sub judice, the record does not reflect whether the trial court examined the settlement agreement in ruling on the parties' motions for summary judgment, nor does the record even contain a copy of the agreement. Therefore, we conclude that a genuine issue of material fact exists regarding the contents of the settlement agreement between the plaintiffs and HRS and whether it apportioned the settlement between the types of claims alleged against HRS, which precludes the entry of summary judgment. Holl v. Talcott, 191 So.2d 40 (Fla. 1966); Baad v. Security Ins. Co. of Hartford, 606 So.2d 451 (Fla. 3d DCA 1992).
Accordingly, the summary judgment entered in favor of HRS is reversed, and this case remanded.