DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**CORNERSTONE SMR, INC.,**
Appellant,

v.

**BANK OF AMERICA, N.A.,** a Foreign Corporation,
Appellee.

No. 4D13-2064

[April 8, 2015]

Appeal and cross-appeal from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; Mily Rodriguez Powell, Judge; L.T. Case No. CACE08040096.

Andrew S. Berman of Young, Berman, Karpf & Gonzalez, P.A., Miami, for appellant.

Tricia J. Duthiers and J. Randolph Liebler of Liebler, Gonzalez & Portuondo, Miami, for appellee.

WARNER, J.

After appellant, Cornerstone, obtained a judgment against appellee, Bank of America, for conversion arising from embezzlement by one of Cornerstone's employees, the Bank moved to offset the recovery by monies Cornerstone obtained in settlement with the employee. Cornerstone objected that it would not be made whole, because the judgment against the Bank did not compensate Cornerstone for all of its losses, due to the expiration of the statute of limitations on many of the embezzled funds. The trial court allowed a "pro rata" set-off, to which the Bank objected. Both parties appeal, Cornerstone claiming that no set-off should have been allowed and the Bank claiming that a full set-off of the entire settlement amount should have resulted in no recovery for Cornerstone. Because we conclude that section 768.041(2), Florida Statutes (2012), compels a full set-off, we agree with the Bank's position on both the appeal and cross appeal and reverse.

Cornerstone, a small start-up company in the radio-dispatch business, was developing its business and operating with a handful of employees.

Its bookkeeper was responsible for overseeing the day-to-day financial operations. Between July 2002 and June 2007, the bookkeeper stole money from Cornerstone by taking checks made out to Cornerstone to Bank of America, where Cornerstone had an account, and depositing them into an account owned by JustTime, Inc., a corporation controlled by the bookkeeper. Her theft was not discovered until 2007.

Cornerstone commenced suit against the bookkeeper, JustTime, and the Bank in August 2008. It sued the bookkeeper for civil theft, conversion, and breach of fiduciary duty; it sued JustTime for civil theft and conversion; and it sued the Bank for conversion of an instrument pursuant to section 673.4201, Florida Statutes, breach of good faith and fair dealing, and breach of fiduciary duty. As to the Bank, Cornerstone alleged the Bank "had an obligation to and was solely responsible to verify the genuineness of the endorsements, the identity of the persons presenting the checks for deposit, and that the checks were deposited to the account in the name of the payee." The Bank answered, raising multiple defenses, including the four-year statute of limitations, which it claimed began to run on each check when it was cashed. Cornerstone responded that the statute did not begin to run until Cornerstone discovered the theft in 2007.

In April of 2010, Cornerstone settled with the bookkeeper as part of her entry of a guilty plea to criminal charges. She agreed to: (1) pay Cornerstone a lump-sum payment of $32,000 on execution of the agreement; (2) pay Cornerstone $1,500 a month for ten years; (3) assign her interest in Cornerstone shares to Cornerstone; and (4) testify in the pending civil lawsuit against the Bank. Cornerstone filed notice of the settlement and dismissed the bookkeeper and JustTime. The Bank then amended its answer to claim that any award should be set-off by the value of the bookkeeper settlement.

At trial, the parties stipulated that the case involved 126 checks totaling $478,490. The parties stipulated that the bookkeeper had paid Cornerstone $41,000 under the settlement and would pay Cornerstone $212,000 over a period of ten years. They also stipulated that "BANK OF AMERICA is entitled to a setoff that will reduce CORNERSTONE's claim against BANK OF AMERICA in the value of [the bookkeeper's] settlement with CORNERSTONE." As one of the issues to be determined at trial, they identified: "Whether the award in favor of CORNERSTONE be [sic] set off or reduced by any recovery received from third parties."

Cornerstone presented damage calculations totaling $582,354.63, which it reached by adding the face value of the checks to the accrued

interest and then subtracting the value of the settlement reduced to present money value. The Bank contested Cornerstone's reduction-to-present value calculation. The Bank also argued Cornerstone's calculations failed to account for the value of the stock the bookkeeper assigned back to the company. Cornerstone took the position that the stock had no value.

Following the bench trial, the court entered an order finding for Cornerstone only on its conversion claim. On the statute of limitations defense, the court found the four-year statute began to run upon the deposit of each check, and therefore barred recovery on all but forty-eight checks, totaling $146,743.23. The court found the Bank was entitled to a "pro rata offset" based on the value of the settlement with the bookkeeper, and that the offset – which would consist of the cash settlement and stock, plus payments over time calculated at present money value – should be applied to the Bank's $146,743.23 post-statute-of-limitations liability. It determined that the stock collected by Cornerstone from the bookkeeper had value. It ordered the parties to submit calculations to accomplish the court's intent.

Instead, Cornerstone moved for rehearing of the order, contending that the set-off should be taken against the total amount of its damages, including those checks which it was barred from recovering from the Bank by the statute of limitations. Based upon its calculations using the larger numbers, the amount of its uncompensated loss exceeded the amount found due from the Bank. So Cornerstone argued that recovery of the entire $146,743.23 (the value of the post-statute-of-limitation checks) would "not create a windfall for Cornerstone nor constitute a duplicative payment, and therefore, there is no basis to reduce the amount found to be due from [the] Bank[.]"

The Bank opposed rehearing. Among the many arguments it made, it pointed to section 768.041(2), Florida Statutes (2012), which required that the set-off should be applied to "any judgment to which the plaintiff would be otherwise entitled at the time of rendering judgment[.]" Moreover, the Bank argued that to apply the offset as advocated by Cornerstone would not result in reduction of the Bank's liability, which was not the intent of the statute. Instead, the Bank contended that only two numbers were needed to calculate the set-off: the amount of damages recovered against the Bank ($146,743.23) and the present money value of the settlement. The present money value amount would be offset against the damages recovered to determine the net judgment.

The court denied the motion for rehearing but, as neither party had submitted proposed calculations, the court made its own.

The court later entered a final judgment, which contained the following calculation:

| | |
|---|---|
| Checks converted from 10/ 11/ 2005 to 6/ 11/ 2007 | $146,743.23 |
| Interest on above checks from conversion to date of trial | + 61,794.65 |
| | $208,537.88 |
| Pro-rata offsets for settlement payments reduced to present value, shares of Cornerstone, and LLC shares | - 86,676.00 |
| For a total of | $121,861.88 |

The court entered judgment for the total against the Bank, which then moved for rehearing itself, arguing that settlement should not be applied pro rata. Instead, the full amount of settlement should be applied against the amount the trial court found due to the bank, which would result in a zero recovery for Cornerstone. The trial court denied the motion for rehearing, prompting an appeal by Cornerstone and cross-appeal by the Bank.

Whether the trial court awarded a proper set-off is a pure question of law reviewed *de novo*, and "no deference is given to the judgment of the lower courts." *D'Angelo v. Fitzmaurice*, 863 So. 2d 311, 314 (Fla. 2003). Nevertheless, the issues presented must have been properly preserved. For this reason, we do not address Cornerstone's argument that set-off should not apply at all, because the Bank and the bookkeeper were not joint tortfeasors and not necessarily liable on the same theories. This argument was first made in the reply brief. *See Duncan-Osiyemi v. Osiyemi*, 117 So. 3d 882, 883 n.1 (Fla. 4th DCA 2013) ("We decline to consider any issue raised for the first time in the reply brief.").

"The common law . . . provided that a release of one joint tortfeasor discharged the obligation or liability of any other joint tortfeasor." Thomas D. Sawaya, 6 Fla. Prac., Personal Injury & Wrongful Death Actions § 7:11 (2014-15 ed.). The Florida Legislature abolished this common law rule in section 768.041, Florida Statutes (2012), which provides:

(1) A release or covenant not to sue as to one tortfeasor for property damage to, personal injury of, or the wrongful death of any person shall not operate to release or discharge the liability of any other tortfeasor who may be liable for the same tort or death.

However, in the same statute, the Legislature also established a method for setting off the damages recovered against one tortfeasor:

(2) At trial, if any defendant shows the court that the plaintiff, or any person lawfully on her or his behalf, has delivered a release or covenant not to sue to any person, firm, or corporation in partial satisfaction **of the damages sued for**, the court shall set off **this amount** from **the amount of any judgment to which the plaintiff would be otherwise entitled** at the time of rendering judgment and enter judgment accordingly.

§ 768.041(2), Fla. Stat. (2012) (emphasis added); *accord* § 46.015(2), Fla. Stat. (2012) (containing materially identical language); *see also* § 768.31(5), Fla. Stat. (2012) (effect of release or covenant not to sue on rights of contribution).

The set-off provision in section 768.041(2) "was designed to prevent duplicate or overlapping compensation for identical damages." *Gordon v. Marvin M. Rosenberg, D.D.S., P.A.*, 654 So. 2d 643, 644 (Fla. 4th DCA 1995) (citing *Devlin v. McMannis*, 231 So. 2d 194, 196 (Fla. 1970)). Cornerstone argues there would be no double recovery here, and therefore there should be no set-off applied, because the settlement amount could be applied to those checks not barred by the statute of limitations; thus, Cornerstone would not be making a recovery for overlapping items of damages.

As the Bank points out, however, the settlement agreement did not allocate the damages between claims. Where a settlement is undifferentiated and general, the aggregate of the amount of the settlement should be set off against the judgment.

Two cases illustrate this principle. In *Devlin*, a joint tortfeasor in a wrongful death action settled with the plaintiff, executing two releases apportioning the settlement between claims of the estate and claims of the deceased's parents as individuals. 231 So. 2d at 195. The trial judge set off the aggregate amount of the settlement against the aggregate verdict, rather than applying the settlement as apportioned. *Id.* The supreme court found this to be error, reasoning that "each count in the complaint

5

in the instant case constituted a distinct cause of action, each embracing distinctive damage elements." *Id.* at 196. However, the court noted:

> [W]e are not unaware that there may be occasions where a settlement is effected so as to fail to preserve or otherwise differentiate settlement sums pertaining to the damages distinctive and peculiar to the underlying causes of action. Under such circumstances, subsequent verdicts entered against another joint tort-feasor on the same causes of action may indeed occasion the necessity of offsetting against the total sum of the verdicts the total amount of the prior settlement. However, we need not explore such possibility under the present set of facts.

*Id.* at 196-97.

Later, in *Dionese v. City of West Palm Beach*, 500 So. 2d 1347 (Fla. 1987), the court was presented with such an undifferentiated settlement agreement. However, the plaintiffs claimed they had privately agreed with the settling tortfeasors to apportion the settlement among the plaintiffs in a particular manner. *Id.* at 1348. The supreme court held: "Both existing case law and fairness to the parties involved require us to ignore a private unilateral apportionment of settlement proceeds among plaintiffs, when the settlement agreement itself fails to apportion the proceeds among the plaintiffs." *Id.* Citing the above-quoted language from *Devlin*, the supreme court ruled that, because "[t]he settlement agreement failed to apportion the proceeds among the separate and distinctive causes of action[,] . . . [t]he total amount of the settlement must be set off from the entire verdict." *Id.* at 1349. The court held:

> Private unilateral agreements by plaintiffs to divvy up the proceeds of a general settlement agreement are contrary to all concepts of fairness. Private unilateral agreements to apportion settlement proceeds would often result in a windfall recovery. . .
>
> **The only proper method of ensuring against duplicate recoveries in an undifferentiated lump sum settlement situation is to set-off the total settlement funds against the total jury award.** If necessary, the settlement can then be allocated proportionally against the jury verdict for each cause of action tried, thus preserving the distinct nature of the separate claims.

6

*Id.* at 1350; *see also Nauman v. Eason*, 572 So. 2d 982, 983-85 (Fla. 1st DCA 1990) (error for trial court to apportion settlement agreement among plaintiffs, where settlement was silent on the subject; ruling that, in absence of allocation by settling parties, entire settlement should have been offset against jury damages).

Although Cornerstone contends that the settlement with the bookkeeper did not duplicate the judgment it received against the bank, without differentiating the settlement, it is impossible to know whether Cornerstone would be receiving a duplicate payment. The bookkeeper did agree to pay substantially less than the value of all of the converted checks. For all we know, the statute of limitations would also bar recovery against the bookkeeper for the same payments as Cornerstone was barred from collecting from the Bank and thus the settlement covered only those payments not barred by the limitations. We understand that we are speculating as to the nature of the recovery, but we do so only to point out the necessity of a settlement agreement that provides the allocation of its proceeds. Otherwise, consistent with *Devlin* and *Dionese,* we must apply the total amount as a set-off to the judgment.

Alternatively, Cornerstone argues that any set-off should be applied to the face value of its losses ($478,490 plus interest) and not to the judgment obtained against the Bank. It bases this argument on the pretrial stipulation wherein the bank agreed: "BANK OF AMERICA is entitled to a setoff that will reduce CORNERSTONE's **claim** against BANK OF AMERICA in the value of [the bookkeeper's] settlement with CORNERSTONE." (Emphasis added.) Thus, the set-off would be applied to the entirety of its claimed damages against the Bank, rather than the ultimate amount Cornerstone recovered from the Bank. This interpretation appears a slender reed, when the parties identified the following issue to be resolved at trial: "Whether the **award** in favor of CORNERSTONE [should] be set off or reduced by any recovery received from third parties." (Emphasis added.) Moreover, the Bank's affirmative defense clearly demanded a set-off of the Settlement amount against any **judgment** entered against it.

Under the plain language of section 768.041(2), Florida Statutes, the set-off must be applied to "the amount of any **judgment** to which the plaintiff would be otherwise entitled at the time of rendering judgment . . . ." § 768.041(2), Florida Statutes (2012). Because Cornerstone was not entitled to recover the full amount of its claimed injury ($478,490) at the time judgment was rendered, due to the statute of limitations, the set-off must be applied only against the recovery that Cornerstone obtained against the Bank ($146,743.23).

While Cornerstone contends that applying the plain meaning of the statute in this case reaches an absurd result of providing a windfall to the Bank whose liability could be reduced to nothing, it is Cornerstone's own failure to allocate the settlement agreement which has produced this result. As noted before, the bookkeeper's settlement amounted to in excess of $300,000. If the statute of limitations applied to most of Cornerstone's claims against the bookkeeper, then the result is not at all absurd but would accomplish the legislative purpose of not permitting a double recovery. It is the lack of specificity in the settlement agreement which has created the problem in this case, not the plain meaning of the statute.

We distinguish *Sompo Japan Insurance, Inc. v. Nippon Cargo Airlines Co.*, 522 F.3d 776 (7th Cir. 2007), relied upon by Cornerstone. There, the plaintiff's ultimate recovery against the defendant was limited by the international Warsaw Convention, and the federal court concluded that, under the Illinois set-off statute, a set-off for a settlement with other defendants should be applied to the total amount of the plaintiff's proven damages, rather than the limited amount ultimately recoverable under the convention. *Id.* 787-89. The federal court found this consistent with Illinois case law treating the set-off right as "plaintiff-centered" and consistent with the convention's purpose to limit defendants' liability to predictable amounts. *Id.* The Illinois set-off statute construed in *Sompo,* however, uses materially different language than the Florida statute. It allows for a set-off to "reduce[] the recovery on any claim[,]" and the parties were disputing the meaning of "recovery." *Id.* at 783. In contrast, the Florida statute refers to the "amount of the judgment." Furthermore, the Warsaw Convention involved a "hardline liability cap[]" regardless of the circumstances, whereas here the statute of limitations prevents recovery only where a plaintiff fails to timely file its claim. Whereas the plaintiff in *Sompo* could not avoid the limitation of the Convention, Cornerstone could have avoided the statute of limitations had it acted sooner. Therefore, *Sompo* provides no guidance for the interpretation of the Florida statute.

Finally, the Bank cross-appeals the court's pro rata allocation of the settlement to the amount it awarded against the Bank. It contends that *Devlin* and *Dionese* require the court to apply the total amount of the settlement against the total award. *See Dionese,* 500 So. 2d at 1350 ("The only proper method of ensuring against duplicate recoveries in an undifferentiated lump sum settlement situation is to **set-off the total settlement funds against the total jury award**.") (emphasis added). Here, the total settlement funds, reduced to present money value, were approximately $285,625 (cash settlement reduced to present money value

of $178,000 and stocks of $107,625).  The total award against the Bank was $146,743.23.  Therefore, the value of the settlement exceeded the amount due from the Bank.  Thus, the court erred in entering judgment for Cornerstone.

For the foregoing reasons, we reverse the final judgment and remand for entry of judgment for the Bank.

MAY and GERBER, JJ., concur.

*     *     *

***Not final until disposition of timely filed motion for rehearing.***