# Third District Court of Appeal

## State of Florida

Opinion filed December 21, 2016.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D15-668
Lower Tribunal No. 06-10808
_____

**Escadote I Corp.,**
Appellant,

vs.

**Ocean Three Limited Partnership, etc., et al.,**
Appellees.

An Appeal from the Circuit Court for Miami-Dade County, Bronwyn C. Miller and Beth Bloom, Judges.

GrayRobinson and Juan C. Martinez, for appellant.

Koeller, Nebeker, Carlson & Haluck and Chad N. Dunigan (Orlando); Kopelowitz Ostrow Ferguson Weiselberg Gilbert and John J. Shahady and Thomas R. Shahady (Fort Lauderdale), for appellees.

Before SUAREZ, C.J., and SHEPHERD and SALTER, JJ.

SALTER, J.

Escadote I Corporation ("Escadote") appeals two aspects of a final judgment entered following years of construction-related litigation: (a) the amount of a set-off allowed by the trial court against Escadote's jury verdict for $2,050,000.00 as against the appellees, and (b) the denial of prejudgment interest on the amount of the collateral settlement that was the basis for the set-off claimed by appellees. We reverse with respect to the order on the amount of the set-off, and we affirm the trial court's denial of prejudgment interest as applied to the corrected set-off amount.

I.    Facts and Procedural History

Escadote purchased a high-rise condominium in the Ocean Three Condominium in Sunny Isles, Florida. In 2006, Escadote commenced a circuit court action against the developer (appellee Ocean Three Limited Partnership; "Developer"), the general contractor (appellee John Moriarty & Associates of Florida, Inc.; "Contractor"), and the Ocean Three Condominium Association ("Association"), for claims of water intrusion and mold infestation in Escadote's unit. Escadote's claims included separate counts against the various defendants, but only the statutory claim against the Association[1] included a demand for

---

[1]  Escadote's claim against the Association (Count IV of the Second Amended Complaint) alleged a breach of the Association's duty to maintain and repair common elements under section 718.113, Florida Statutes (2007).

2

Escadote's attorney's fees. The basis for attorney's fees against the Association was alleged to be section 718.303, Florida Statutes (2007).

The case proceeded to trial by jury in March 2010. On the last day before submission of the case to the jury, the Association and Escadote reached a settlement for $375,000.00. The jury later returned a verdict against the Developer and Contractor, jointly and severally, for $2,050,000.00. The trial judge at the time granted the Developer's and Contractor's motion for judgment in accordance with prior motions for directed verdict, entering a final judgment for the Developer and Contractor. Escadote appealed that ruling to this Court, which reinstated the jury verdict. John Moriarty & Assocs. of Fla. v. Murton Roofing Corp., 128 So. 3d 58 (Fla. 3d DCA 2013).

In its Order on Plaintiff's Motion for Entry of Judgment entered after remand, the trial court described the Escadote-Association settlement:[2]

> Under the terms of the settlement, the Association was to tender $375,000 in exchange for a full release of all claims. The settlement

---

[2] To address a concern expressed in the dissent, the confidentiality of the settlement agreement was recognized and consented to by the appellees. In footnote 2 of the Developer's and Contractor's memorandum in support of their motion for set-off, they acknowledged that "[t]he Settlement Agreement was produced by Plaintiff's counsel to Defendants' counsel and is referred to in this Memorandum. However, the Settlement Agreement contains a confidentiality provision that prohibits it from being filed with the Court. As a result, Defendants have not attached the Settlement Agreement to this Memorandum." In short, both sides acknowledged the pertinent allocation provision (including the amounts allocated to each claim) within the Escadote-Association agreement, but they agreed not to file the agreement itself.

agreement provided that $500 of the settlement was attributable to damages and the remainder was intended to reimburse Escadote for attorney's fees. Funds were tendered and a joint release was executed on April 28, 2010.

The trial court was aware of the allocation and referred to it in her order on setoff. The fact of allocation and amount of the allocation to Escadote's attorney's fee claim against the Association, $374,500.00, were uncontroverted.

On remand following Escadote's successful appeal and reinstatement of the jury verdict, the Developer and Contractor filed a motion for collateral set-off, claiming that the entire $375,000.00 recovery by Escadote from the Association should be applied to reduce the amount of the jury verdict to be reflected in the final judgment. Escadote argued that only $500.00 of the recovery should be applied to reduce the jury verdict and judgment amount, as $374,500.00 had been apportioned by the settling parties in their settlement agreement to compensate Escadote for a claim unique to its case against the Association—a claim for statutory attorney's fees under the condominium statute.[3]

The trial court disallowed the apportionment sought by Escadote and instead ordered that the entire amount would be allowed as a set-off to reduce Escadote's judgment against the Developer and Contractor. In a separate order, the trial court also denied Escadote's claim for prejudgment interest on the full set-off amount

_____

[3] In interrogatory responses in August 2009, Escadote listed its attorney's fees through May 31, 2009, as $496,371.40. In its pretrial compliance filing a month before trial, Escadote disclosed attorney's fees of $741,000.00.

4

from the date of loss (found in a previous order to be December 24, 2003) through the date the Association actually paid the $375,000.00 settlement. This appeal followed.

II.     Analysis

Each of the issues presented—the determination of the proper set-off amount and Escadote's entitlement to prejudgment interest from the date of loss to the date the settlement amount was paid—is a question of law which we consider under a de novo standard of review. Cornerstone SMR, Inc. v. Bank of Am., N.A., 163 So. 3d 565, 568 (Fla. 4th DCA 2015) (stating that set-off is a pure question of law, with no deference given to the judgment of the trial court); Argonaut Ins. Co. v. May Plumbing Co., 474 So. 2d 212 (Fla. 1985) (finding that prejudgment interest on a party's out-of-pocket pecuniary losses is a legal entitlement once a verdict has liquidated those damages as of a date certain). The trial court's interpretation of the release as a waiver by Escadote of a right to prejudgment interest on the set-off amount is also reviewed de novo. Muniz v. Crystal Lake Project, LLC, 947 So. 2d 464 (Fla. 3d DCA 2006).

A.     Set-off

Set-offs for collateral recoveries are available pursuant to section 768.041(2), Florida Statutes (2010). The statute specifies that if a defendant demonstrates that a plaintiff has released a "person, firm, or corporation in partial

5

satisfaction of the damages sued for, the court shall set off this amount from the amount of any judgment to which the plaintiff would be otherwise entitled at the time of rendering judgment and enter judgment accordingly." Section 46.015(2), Florida Statutes (2010), includes a nearly-identical provision that, for purposes of this case, operates in the same way as section 768.041(2). Cases interpreting the statutes have established two principles that apply to this case.

### 1. "The Damages Sued For"

First, as the statute requires, the settlement recovery sought to be set off must be "in partial satisfaction of the damages sued for." If the settlement funds are applicable to a claim asserted only against the settling co-defendant, the non-settling co-defendants are not eligible for a set-off in the amount of the settlement. Wells v. Tallahassee Mem'l Reg'l Med. Ctr., 659 So. 2d 249 (Fla. 1995). Expressed another way, the statutes "presuppose the existence of multiple defendants jointly and severally liable for the **same** damages." Id. at 253 (emphasis provided); D'Angelo v. Fitzmaurice, 863 So. 2d 311, 314 (Fla. 2003); Gouty v. Schnabel, 795 So. 2d 959, 965 (Fla. 2001) (the underlying rationale of Wells is that "the operation of the setoff statutes was premised upon the determination that the defendant was jointly and severally liable for the **same** damages.") (emphasis provided).

6

The record demonstrates that Escadote responded in interrogatory answers and in pretrial compliance with a distinct articulation that attorney's fees were claimed as damages under Count IV (and only in Count IV) against the Association. In the memorandum in support of their joint motion for set-off in 2014, the Developer and Contractor attached Escadote's responses to interrogatories of August 5, 2009, itemizing $8,508,895.72 in damages through June 26, 2009. Item 8 of that damages list was characterized by Escadote as an affirmative claim under Count IV, the claim against the Association, for attorney's fees in the amount of $496,371.40. The preface to the interrogatory answers included a statement that "The figures for Carrying expenses, Interest, Attorneys' fees and Costs are very likely to change as **these damages** will continue to accrue until trial and beyond." (Emphasis provided).

The Developer's and Contractor's memo in support of their 2014 motion for set-off acknowledged, in paragraph 6, that "Plaintiff also disclosed **damages for attorney's fees** in the amount of $496,371.40 **against the Association**, which represents only 5.8% of [Escadote's] claim." (Emphasis provided). The memo also attached Escadote's pretrial compliance filed in February 2010, which included in its "Specification of Damages" a claim for attorney's fees of $741,000.00. Escadote neither sought nor recovered any attorney's fees from the Developer or the Contractor.

7

### 2. Apportionment vs. Undifferentiated Recovery

The second principle applicable to the record in this case is that, in a case in which a settlement recovery is not apportioned between (a) claims for which co-defendants are jointly and severally liable with the settling co-defendant, and (b) claims which were only asserted against the settling co-defendant, the entire amount of the undifferentiated recovery is allowable as a set-off. Dionese v. City of West Palm Beach, 500 So. 2d 1347 (Fla. 1987) (reasoning that although plaintiffs apportioned settlement funds **among the plaintiffs** in a particular manner, the funds were not allocated among the separate and distinctive causes of action, so the total amount of the settlement was allowed as a set-off). In the present case, Escadote and the Association were on opposite sides of the case and Escadote's claim against the Association included an element of damages that was not a part of Escadote's claim against the Developer and the Contractor.

When a settlement recovery is allocated between claims with different and distinctive damage elements, set-off should only be allowed to co-defendants jointly and severally liable for the **same** claims. Devlin v. McMannis, 231 So. 2d 194, 196 (Fla. 1970) (section 768.041(2) "authorizes to be set off from a judgment against one joint tort-feasor only the amount constituting a settlement for the damages or damage elements recoverable in the same cause of action against another joint tort-feasor").

8

The obvious purpose of the statutory provisions is to prevent a windfall to a plaintiff—a double recovery on a particular claim for which the non-settling defendants are identically liable. "The set-off provision in section 768.041(2) 'was designed to prevent duplicate or overlapping compensation for **identical** damages.'" Cornerstone SMR, 163 So. 3d at 569 (quoting Gordon v. Marvin M. Rosenberg, D.D.S., P.A., 654 So. 2d 643, 644 (Fla. 4th DCA 1995)) (emphasis provided).

### 3. Application of the Principles in This Case

Applying these two principles to the present case, Escadote asserted a claim for statutory attorney's fees against the Association which was not and could not be asserted against the co-defendants, Developer and Contractor.[4]  Although the Developer and Contractor argue here that Escadote **could** have claimed attorney's fees in the counts of its complaint directed against the Developer and Contractor (under the original purchase agreement relating to the unit), Escadote made no such claim and could not have recovered legal fees that it did not plead.  See Stockman v. Downs, 573 So. 2d 835, 837-38 (Fla. 1991).  It follows that the Developer and Contractor were not jointly and severally liable for attorney's fees and costs claimed by Escadote against the Association and only the Association.

---

[4]  Section 718.303, Florida Statutes (2010), provides for an award of legal fees to the prevailing party in litigation between an association and a unit owner.

Further, Escadote's responses to interrogatories and its pretrial disclosures in this record demonstrate that the allocation of $374,500.00 cannot objectively be characterized as a "windfall" or double recovery. Escadote's attorney's fees, as disclosed by Escadote a month before the trial, were nearly twice the settlement amount paid by the Association, and none of those fees were recoverable from the Developer or Contractor. The jury verdict form naturally omitted any reference to attorney's fees, as these are determined by the court rather than a jury, and the damages of $2,050,000.00 were awarded based upon "the breach(es) of implied warranty relating to the diminished value of Unit 3405." Those damages are not the "same" damages collectible by Escadote from the Association, because the Association was also uniquely liable for statutory attorney's fees.

The second principle, that apportionment of settlement funds is only appropriate when the settling parties have allocated the settlement between (a) claims for which co-defendants are jointly and severally liable with the settling co-defendant, and (b) claims which were only asserted against the settling co-defendant, is also satisfied in the present case. As already noted, the trial court's order entering judgment found that "[t]he settlement agreement provided that $500 of the settlement was attributable to damages and the remainder was intended to reimburse Escadote for attorney's fees." Reliance by the Developer and Contractor on Dionese, supra, is misplaced because the "private, unilateral

10

agreement" in that case was among the plaintiffs, not among the separately pleaded claims for differing elements of liability. Dionese actually held that "an agreement to apportion the proceeds of a settlement agreement must be found on the face of the settlement agreement and agreed to by all of the parties involved in the settlement." 500 So. 2d at 1351. There is no dispute that the allocation was in the settlement agreement and that Escadote and the Association were "all of the parties" involved in that settlement.

The Developer and Contractor argue that Dionese, supra, and Alexander v. Seaquest, Inc., 575 So. 2d 765 (Fla. 4th DCA 1991), require the trial court to reject a "private and unilateral" settlement apportionment taking place after a jury verdict without notice to the non-settling party, because "the non-settling tort-feasors lose the right to settle." They candidly concede that this issue was not raised by them in the trial court.

We reject the argument for other reasons as well: as noted, Dionese involved an apportionment among the plaintiffs, not among different claims with differing damages elements. Alexander involved the inconsistency between a probate court's apportionment of a settlement to an estate ("just under six percent") and an earlier jury verdict determining that the estate was entitled to "thirty percent of the total verdict" against the non-settling defendants. Alexander, 575 So. 2d at 766. As the Fourth District observed in Alexander, "[a]pparently, the probate judge did

11

not know that the wrongful death action had gone to trial and that the jury had determined that the estate was entitled to thirty percent of the total verdict." Id. No such record is before us in the present case.

Finally, the Developer and Contractor did not demonstrate that the terms agreed upon by Escadote and the Association, including apportionment, were reached after the jury verdict. There is no dispute that the settlement was reached before the claims against the Developer and Contractor were submitted to the jury, and that the Developer and Contractor were aware that the settlement had occurred before their own claims went to the jury. The Developer and Contractor cannot claim, and have not claimed, that they could not have renewed settlement negotiations based on the announcement that the Association had settled with Escadote (an announcement made **before** the presentation of the remaining claims against the Developer and Contractor to the jury).

For these reasons, there was no overlapping or duplicate recovery beyond the $500.00 allocated to the compensatory damages, and no windfall inherent in the recovery of legal fees by Escadote against the Association on the Association's unique statutory obligation to pay attorney's fees. We reverse the order granting the defendants' motion for a collateral set-off of $375,000.00, and remand for the entry of an order granting that motion to the limited extent of $500.00.

B. Prejudgment Interest

We affirm the trial court's denial of Escadote's motion for prejudgment interest on the amount of the set-off, with such interest commencing on the date of loss established for other compensatory damages, through the date of the jury verdict (as was allowed for the amounts awarded by the jury on the claims against the Developer and Contractor).[5] Such an award of prejudgment interest is inappropriate, because Escadote settled with the Association and issued a release that was all-inclusive as of the date of the settlement. Escadote did not carve out or preserve any claim for prejudgment interest antedating the settlement and payment. To the contrary, Escadote accepted a liquidated sum for its claims asserted against the Association, and this included any additional sum for prejudgment interest. See AXA Equitable Life Ins. Co. v. Gelpi, 12 So. 3d 783, 785 (Fla. 3d DCA 2009). We thus affirm the trial court's denial of Escadote's claim for prejudgment interest on the amount of the set-off (though on remand prejudgment interest will be payable on the jury verdict amount as reduced by $500.00 rather than $375,000.00).

III.    Conclusion

We reverse the Order on Defendant's Motion for Collateral Set-Off, and remand the case to the trial court for a reduction of the set-off amount to $500.00 and the entry of an amended final judgment against the Developer and the

---

[5] By virtue of our reduction of the allowable set-off to $500.00, this issue on appeal becomes far less consequential.

13

Contractor reflecting that reduction (effective as of the date of the jury verdict). We affirm the trial court's order denying prejudgment interest on the amount of the settlement proceeds recovered by Escadote from the Association to be applied as a reduced set-off.

Affirmed in part, reversed in part, and remanded for further proceedings.

SUAREZ, C.J., concurs.

SHEPHERD, J., concurring in part and dissenting in part.

I concur in Part II.B of the majority opinion, holding that pre-judgment interest on the amount of the settlement proceeds recovered by Escadote I Corp. from Ocean Three Condominium Association should be calculated from the date of the settlement. However, I respectfully dissent from Part II.A, in which the majority reverses the order of the trial court setting off the full $375,000 settlement sum against the jury verdict based upon a private agreement between the parties about which we know nothing, not even the date the deal was struck. In fact, the only written evidence the parties deigned to supply this court confirming their settlement is a general release signed by Escadote I more than thirty days after the end of the trial in which Escadote I acknowledged "receipt" of the an undifferentiated $375,000 in consideration of the release.

On the record as we have it, we cannot decipher why the trial court ruled as it did. Although the settlement agreement was exhibited to the trial judge at the hearing on the motion for collateral set-off, Escadote elected not to trust this court

with a copy of this all-important document "because of concerns regarding confidentiality."[6] Not only that, we also are not favored with a transcript of the hearing on the Developer's and Contractor's joint motion for set off. It may be that the facts as they unfolded at the hearing revealed the apportionment was an afterthought. See Alexander v. Seaquest, Inc., 575 So. 2d 765 (Fla. 4th DCA 1991) ("[T]he apportionment of a settlement comes too late if done after the jury verdict because the non-settling tortfeasors lose their right to settle, thus frustrating the purpose of section 768.31(5), Florida Statutes 1987."). It may be the hearing revealed that the apportionment was not reached as a result of an arms-length negotiation, that the amounts of the respective allocations could not be substantiated, or that it was executed after the general release and therefore unenforceable. It seems apparent on the record as we have it that it is unlikely the Association had any particular interest or care in whether or how the settlement amount was allocated. All we have from the trial court on the motion and hearing thereon is a one-line trial court order stating that the motion for collateral set-off is "granted."

Escadote has the burden of demonstrating error in the record of the proceedings. All we know from the record in this case is that at some unknown

---

[6] The writer hopes he can be forgiven if he takes offense at Escadote's lack of trust in the ability of this court to maintain confidentiality of documents submitted to us on appeal. The courts of this state regularly receive documents, and in certain types of cases complete case files, under seal.

time the condominium unit owner and its governing body made a private agreement to allocate $375,000 in settlement funds, $500 to "damages" and $374,500 to attorney's fees. Escadote I and the Association agree that at least some part of the settlement proceeds must be assigned to the defendants' joint and several liability to Escadote I. Where an apportionment agreement is unenforceable, the entire amount of the settlement is set off against the jury verdict. See Dionese v. City of West Palm Beach, 500 So. 2d 1347 (Fla. 1987). Escadote I has not brought us a sufficient record to overturn the decision of the trial court. For this reason, I respectfully dissent from Part II.A of the majority opinion.